COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| EAST CENTRAL INDEPENDENT SCHOOL DISTRICT, | § | No. 08-10-00201-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 224th District Court |
| | § | |
| BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO AND | § | of Bexar County, Texas |
| SAROSH MANAGEMENT, L.L.C., A/K/A ZRS MANAGEMENT, INC. | § | (TC # 2009-CI-17596) |
| | § | |
| Appellees. | § | |

## O P I N I O N

The East Central Independent School District appeals from an order granting a plea to the jurisdiction filed by Sarosh Management, L.L.C. a/k/a ZRS Management, Inc. (Sarosh). We sustain Issue Two and reverse and remand.

## FACTUAL SUMMARY

On April 27, 2009, Sarosh applied for a certificate of occupancy for a convenience store, A-Z Food Mart, in San Antonio and indicated on the application that alcohol sales would be made at the location. It is undisputed that the convenience store is located less than 300 feet from an elementary school located in ECISD. In determining the store's distance from the elementary school, the building inspector mistakenly measured from the door of the convenience store to the door of the school rather than measuring the distance between the respective property lines. Consequently, the building inspector recommended that the certificate of occupancy be issued. The Planning Department subsequently became aware of the building inspector's error

and on August 12, 2009, it revoked Sarosh's certificate of occupancy because the convenience store was selling beer within 300 feet of an elementary school. Sarosh appealed and, on October 5, 2009, the Board of Adjustment, by a 9-2 vote, reversed the decision revoking the certificate of occupancy. On October 19, 2009, the Board of Adjustment approved the minutes of the October 5 meeting and filed the minutes in the Board of Adjustment offices.

On October 28, 2009, ECISD filed suit in the 224th District Court of Bexar County seeking judicial review of the Board of Adjustment's decision.[1] *See* TEX.LOCAL GOV'T CODE ANN. § 211.011 (West 2008). On that same date, Roderick Sanchez, the Director of Planning and Development Services Department of the City of San Antonio, and the Planning and Development Services Department of the City of San Antonio[2] filed suit in the 131st District Court of Bexar County appealing the Board of Adjustment's decision.[3] Sarosh filed a plea to the jurisdiction in each case asserting that the district court lacked jurisdiction of the suits because they were not filed within ten days after the date the decision was filed in the Board of Adjustment's office as required by Section 211.011(b) of the Texas Local Government Code. Following an evidentiary hearing, the district court granted Sarosh's plea to the jurisdiction in each case. The Planning Department and ECISD filed notices of appeal in their respective cases.

**JURISDICTION**

In Issues One and Two, ECISD argues that the district court erred by granting the plea to the jurisdiction. In Issue One, ECISD maintains that it filed its suit as a collateral attack on the

---

[1] The suit was filed in cause number 2009-CI-17596 and is styled *East Central Independent School District v. Board of Adjustment for the City of San Antonio and Sarosh Management, L.L.C. d/b/a A-Z Food Mart*.

[2] The opinion will refer to Sanchez and the Planning Department collectively as the Planning Department.

[3] The suit was filed in cause number 2009CI17593 and is styled *Roderick Sanchez, Director, Planning and Development Services Department, City of San Antonio, and Planning and Development Services Department, City of San Antonio v. Board of Adjustment for the City of San Antonio and Sarosh Management, L.L.C. a/k/a ZRS Management, Inc.*

Board of Adjustment's decision, and therefore, the requirements of Section 211.011 are inapplicable. Alternatively, ECISD contends in its second issue that it timely filed its petition within ten days after the Board of Adjustment approved its the minutes and filed them in its office on October 19, 2009. We will address the second issue first.

*Standard of Review*

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff bears the burden to allege facts affirmatively proving that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction are questions of law which we review *de novo*. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 226. When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Bland ISD*, 34 S.W.3d at 555. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227-28; *see City of Elsa*, 325 S.W.3d at 626. On the

other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

*Judicial Review Pursuant to Section 211.011*

In the case below, ECISD sought judicial review of the Board of Adjustment's decision reversing the Planning Department's revocation of the certificate of occupancy. Under Section 211.011, a person aggrieved by a decision of the board may present to a district court a verified petition stating that the decision of the board is illegal is whole or in part and specifying the grounds of the illegality. TEX.LOCAL GOV'T CODE ANN. § 211.011(a)(1). Under subsection (b), the "petition must be presented within 10 days after the date the decision is filed in the board's office." TEX.LOCAL GOV'T CODE ANN. § 211.011(b). This requirement is jurisdictional. *See Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007). Although the statute speaks in terms of the petition being presented, jurisdiction exists once a party files a petition within ten days after the board's decision. *Id.*

*The Board of Adjustment*

The City of San Antonio has established a board of adjustment comprised of eleven members appointed for a term of two years. *See* TEX.LOCAL GOV'T CODE ANN. § 211.008(a) (providing that the governing body of a municipality may provide for the appointment of a board of adjustment). According to Article II of the Board of Adjustment's Articles of Rules and Procedures, the Board elects a Chair and a Vice-Chair from its membership by majority vote.[4] The Director of the Planning and Development Services Department, or a designated representative, serves as Executive Secretary of the Board. Pursuant to Article VI, all meetings and hearings of the Board are subject to the Texas Public Information Act and any

---

[4] The Articles of Rules and Procedures of the Board of Adjustment (revised April 2009) are available online on the official website of the City of San Antonio, Development Services Department, Zoning Section.

action calling for a formal vote shall take place only at a public meeting or hearing. Article VI, Section G addresses the relationship between the Board and the Planning Department:

> Staff of the City of San Antonio Planning and Development Services Department, herein referred to as 'Staff', shall conduct all official correspondence of the Board; send out all official notices required by law; keep records of each examination or other official action of the Board and perform all other duties required by law and these Rules and Procedures.

With respect to the Board's minutes, Article VI, Section I provides that "[t]he Board, through its Secretary, shall keep minutes of all meetings that indicate the vote of each member on every question on which it is required to act, or the fact that a member is absent." The Rules additionally require that the minutes be filed in the Office of the Planning and Development Services Department. Finally, the Rules and Procedures provide that approval of the minutes is part of the usual order of business in a meeting of the Board.

### *The Evidence*

In support of its position that the Board's decision was filed on October 19, 2009, the Planning Department relied on the affidavit of Rudy Niño, Jr., a Planning Supervisor in the Planning and Development Services Department. Niño averred that he was familiar with the policies, procedures, and practices of the Planning Department as they relate to the Board of Adjustment. Following a meeting of the Board of Adjustment, the staff prepares the minutes to reflect the Board's decisions and those minutes are "voted on and approved at a subsequent Board meeting." Niño further stated that: "Decisions of the Board are generally not filed until some time after the Board meeting where the initial vote is conducted." In this particular case, the minutes were approved and the Board's decision was filed on October 19, 2009.

At the hearing on the plea to the jurisdiction, Sarosh introduced the depositions of Sandra Ann Gonzalez, an administrative assistant employed by the City of San Antonio, and Niño.

Gonzalez's duties include performing administrative work related to the Board of Adjustment. Gonzalez attends the Board of Adjustment meetings and creates an electronic audio recording of the meeting. Sometime after the October 5, 2009 meeting, Gonzalez transferred the digital audio recording onto a CD which is normally retained for ninety days before it is destroyed. Gonzalez's duties also included transcribing the minutes of the meeting by listening to the audio recording.[5] Within one week after the October 5 meeting, Gonzalez transcribed the minutes using a laptop at work and saved the document on her laptop. On October 19, 2009, the Board of Adjustment approved the minutes of the October 5, 2009 meeting. Gonzalez posted the minutes online after they were approved by the Board so they could be viewed by the public. She testified that if a member of the public called after a meeting but prior to approval of the minutes, she would inform the person of the Board's decision made at the meeting.

Niño's duties include supervising planners who write recommendations regarding variance cases that go before the Board of Adjustment and attending the Board's meetings to provide information or answer questions. After the October 5, 2009 meeting, Niño sent a letter to counsel for Sarosh informing him that the Board of Adjustment had voted to overturn the decision of the Planning Department revoking the certificate of occupancy. Niño advised counsel that: "A summary[6] of the actions taken by the Board of Adjustment, including the results of your request, will be filed in the Planning and Development Services Department on October 19, 2009." The letter was not dated, but Niño testified that it would have been sent

---

[5] At the hearing on the plea to the jurisdiction, Sarosh's counsel stated that Gonzalez "presse[d] a button" and created a seventy-three page transcription of the entire October 5 meeting. Counsel argued that this transcription was filed in the Board's office when it was prepared by Gonzalez. The transcription, however, was prepared by a certified court reporter, Lindi S. Roberts, and Gonzalez made clear in her deposition that she had not prepared the seventy-three page transcription, and in fact, had never seen it before. The record does not reflect when the court reporter prepared the transcription of the meeting or whether it was ever filed in the Board's office.

[6] In his deposition, Niño referred to the minutes as a "summary" of the Board's actions.

sometime after October 5 but before the approval of the minutes on October 19. There is no evidence that Niño's letter was filed in the Board's office. Like Gonzalez, Niño testified that if someone called the Planning Department requesting information about the Board's vote after the October 5 meeting, he would have informed them of the Board' decision.

Sarosh also introduced into evidence: (1) a copy of the minutes reflecting they were approved by the Board of Adjustment's chairman, Michael Gallagher, on October 19, 2009 and attested to by the Board's executive secretary[7] on October 21, 2009; and (2) the court reporter's transcription of the October 5, 2009 meeting.

### The Parties' Arguments

ECISD contends that the appellate timetable did not begin running until October 19, 2009 when the Board of Adjustment approved the written minutes and filed them in the Board's offices. The Board of Adjustment takes the opposite view and responds that it is not required to keep or approve minutes but instead is permitted to file its decision in electronic form. The Board maintains that its staff created two electronic records of the Board's decision: (1) the audio recording of the October 5, 2009 meeting which included the Board's final decision; and (2) the minutes transcribed by Gonzalez on a computer prior to October 19, 2009 and maintained in the custody of the Board. Sarosh likewise argues that Section 211.011(b)'s timetable began running on October 5, 2009 when the Board made its decision and Gonzalez created the electronic recording of the Board meeting. These arguments raise a question regarding the meaning of the statute.

### Rules of Statutory Construction

Statutory construction is a legal question that we review *de novo* in order to ascertain and give effect to the Legislature's intent. *F.F.P. Operating Partners., L.P. v. Duenez*, 237 S.W.3d

---

[7] The executive secretary's signature is illegible, but it can be ascertained that it is not Gonzalez's signature.

680, 683 (Tex. 2007). When construing a statute, we begin with its language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We must interpret the statute according to the plain meaning of the language used, and must read the statute as a whole without giving effect to certain provisions at the expense of others. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Each word, phrase, or expression must be read as if it were deliberately chosen, and we will presume that words excluded from a provision were excluded for a purpose. *Gables Realty Ltd. Partnership v. Travis Central Appraisal District*, 81 S.W.3d 869, 873 (Tex.App.-- Austin 2002, pet. denied). We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. *See* TEX.GOV'T CODE ANN. § 311.023(1), (3), (5)(West 2005); *Shumake*, 199 S.W.3d at 284.

*Meaning of the Term "Decision" Under § 211.011(b)*

Section 211.011(b) requires that a party file its petition "within 10 days after the date the decision is filed in the board's office." TEX.LOCAL GOV'T CODE ANN. § 211.011(b). Significantly, the statute does not provide that the appellate timetable begins running from the date the decision is *made* by the board of adjustment, but rather from the date the decision is *filed* in the board's office. The statute does not define "decision" nor does it expressly require that the decision be a written one. Nevertheless, Section 211.011(b) contemplates that some kind of physical record of the decision will be made and filed in the board office. The meaning of the term "decision" is better understood when examined in light of Section 211.008(f) which provides that:

> The board shall keep minutes of its proceedings that indicate the vote of each member on each question or the fact that a member is absent or fails to vote. The board shall keep records of its examinations and other official actions. *The minutes and records shall be filed immediately in the board's office and are public records.* [Emphasis added].

TEX.LOCAL GOV'T CODE ANN. § 211.008(f).

Minutes are a permanent record of what action was taken at a meeting, not a record of what was said. *Robert's Rules of Order Newly Revised* p. 468 (11th ed. 2011).[8] Consistent with parliamentary procedure, a board of adjustment's decision, as reflected by the vote of each member on a particular question, must be recorded in the board's minutes and those minutes must be filed in the board's office. TEX.LOCAL GOV'T CODE ANN. § 211.008(f); *see also* TEX.GOV'T CODE ANN. § 551.021(b) (West 2004)(requiring that the minutes (1) state the subject of each deliberation; and (2) indicate each vote, order, decision, or other action taken). Section 211.008(f)'s additional requirement that the board keep a record of its examinations is a means of creating a record of what was said at the meeting.

Citing Section 551.021 of the Texas Open Meetings Act, the Board of Adjustment argues that it is not required to keep minutes, but has the option to instead make a tape recording of its meetings. The Board of Adjustment reasons that the audio recording of its proceedings constitutes its "decision" for purposes of Section 211.011(b). The Texas Open Meetings Act requires a governmental body[9] to prepare and keep minutes or make a tape recording of each open meeting. *See* TEX.GOV'T CODE ANN. § 551.021 (West 2004). In this case, the Board of Adjustment did both. The Board of Adjustment's argument that it is not required to keep minutes not only ignores Section 211.008(f)'s mandate that it do so but is contrary to its own Rules and Procedures.[10]

---

[8] Article VII, Section C of the Articles of Rules and Procedures of the City of San Antonio's Board of Adjustment provides: "Any question regarding parliamentary procedure not covered by these rules shall be decided according to the latest edition of Robert's Rules of Order."

[9] The Texas Open Meetings Act defines "governmental body" as "a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality." TEX.GOV'T CODE ANN. § 551.001(3)(D)(West Pamph. 2011).

[10] The Board of Adjustment does not argue that there is a conflict between Section 211.008(f) of the Local

In attempting to ascertain what the Legislature intended by use of the term "decision" in Section 211.011(b), we believe it is important to consider the legislative history. The Legislature enacted the predecessor statute, Article 1011g, in 1927. Acts 1927, R.S., 40th Leg., ch. 283, § 7, 1927 TEX.GEN.LAWS 424. Article 1011g § 7 contained the requirements of both Sections 211.008(f) and 211.011(b) in the same section and in substantially the same language.[11] At the time of Article 1011g's enactment, the keeping of minutes was the accepted means for the decisions of a board or other assembly to be recorded and preserved, and that is a recognized use of minutes in our current society. The Board of Adjustment suggests that keeping minutes is an antiquated and outdated concept, but we note that the statute has remained unchanged for more than eighty years. Given that the Legislature has required since 1927 that a board of adjustment file in its office minutes which record its vote on a particular question, we believe the Legislature's use of the term "decision" in Section 211.011(b) refers to the decision recorded in the board's minutes and subsequently filed in the Board's office.

Our conclusion is supported by consideration of the consequences of holding that the Legislature intended the term "decision" to refer to an electronic recording of the meeting. A party who wishes to appeal should be able to readily determine when a board of adjustment's decision has been filed in the board's office so it can timely file its petition pursuant to Section 211.011(b). This is easily done when, as in this case, the board of adjustment approves its

---

Government Code and Section 551.021 of the Government Code.

[11] Article 1011g, § 7 provided, in relevant part, that: "The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the offices of the board and shall be a public record." Acts 1927, R.S., 40th Leg., ch. 283, § 7, 1927 TEX.GEN.LAWS 424. Six paragraphs later, the statute provided: "Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within 10 days after the filing of the decision in the office of the board." *Id.*

minutes, files them in its office, and posts them online for public access. According to counsel for ECISD, he contacted the Board of Adjustment to determine the filing date and was advised that the decision would be filed in the Board's office on October 19 when the minutes were approved and filed. Were we to hold that the board's decision is the CD created by an employee from the electronic recording of the board's meeting, a party who wished to appeal would not be able to readily determine when that recording has been created or when it is considered by the board of adjustment to have been filed in its office because there is no requirement that notice be given to the parties. After reading Sections 211.008(f) and 211.011(b) together and considering the history of the statute and the consequences of the possible constructions, we conclude that the term "decision" means the board of adjustment's minutes reflecting a vote on a particular question and the records related to that decision.

*Approval of the Minutes*

We turn now to address whether the Board's decision was filed for purposes of Section 211.011(b) when Gonzalez transcribed the minutes and stored them on the hard drive of her laptop computer as a pdf file. Citing *Hall v. Board of Adjustment of City of McAllen*, 239 S.W.2d 647 (Tex.Civ.App.--San Antonio 1951, no writ), the Board of Adjustment argues that its decision can be filed before the minutes are approved. In *Hall*, the board of adjustment did not have a regularly elected secretary, but an individual named Patterson customarily acted as the secretary. At the meeting in question, Patterson wrote the minutes in longhand on yellow paper and placed them in the minute book. The following day, the minutes were typed into the minute book kept in the office of the building inspector for the City of McAllen. A certified copy of the minutes introduced into evidence bore the signatures of the chairman and board members, and was attested by the secretary. The minutes did not reflect the date the minutes had been

approved by the board. Hall and the other appellants did not file their petition until twenty-five days after the minutes were typed into the minute book.

The San Antonio Court of Appeals held that the appellate timetable began running, not when the board approved the minutes, but when the minutes were "prepared by the proper officer" and typed into the minute book. *Hall*, 239 S.W.2d at 649. We agree with the analysis in *Hall*, but the instant case is distinguishable. Simply put, there is no evidence here that the executive secretary, or a designated representative, ever typed the minutes into a minute book or took some action indicating that the minutes had been approved and filed in the Board's office. Gonzalez's preparation of the minutes for approval by the Board at a subsequent meeting and storing the pdf file on the hard drive of her laptop is not the functional equivalent of typing the minutes into the minute book.

The Board of Adjustment additionally relies on *Reynolds v. Haws*, 741 S.W.2d 582, 586-87 (Tex.App.--Fort Worth 1987, writ denied). In that case, the board of adjustment filed in its office a written document which summarized the board's decision. Almost a month later, the board filed its minutes. The court of appeals determined that the summary filed in the board's office constituted the decision of the board for purposes of triggering the appellate timetable under the predecessor to Section 211.011(b). The instant case is factually distinguishable because the Board of Adjustment did not file a summary of its decision at any time.

The Board of Adjustment additionally argues that there is no longer a requirement that the minutes be approved but it cites no authority for that statement and it did not offer any evidence in support of that assertion. Approval of the minutes by the assembly or by the secretary in accordance with the assembly's procedures is a well-established requirement of

parliamentary procedure. *See Robert's Rules of Order Newly Revised* p. 469 (11th ed. 2011).[12]

In contrast with the argument it makes on appeal, the Board's own Articles of Rules and Procedures requires that the Board of Adjustment approve its minutes at a subsequent meeting as evidenced by the signature of the Chairman or Vice-Chair as attested to by the Executive Secretary. The evidence reflects that the Board followed that procedure in this case. Gonzalez's testimony is clear that she does not post the minutes online for public access until after the minutes have been formally approved by the Board. It is apparent that the Board's procedures require approval of the minutes before the minutes are treated by the Board as a public record of its decision. From this evidence we conclude that the minutes are not filed in the Board's office for purposes of Section 211.011(b) until the minutes have been approved. Consequently, we decline to find that Gonzalez's storage of the unapproved draft on her laptop constituted filing of the Board's decision for purposes of Section 211.011(b).

The record before us establishes that the Board filed its approved minutes on October 19, 2009. Consequently, ECISD timely filed its petition on October 28, 2009. The trial court erred by granting the plea to the jurisdiction. Issue Two is sustained. Given our disposition of Issue Two, it is unnecessary to address Issue One. We reverse the order granting the plea to the jurisdiction and remand the cause to the district court.

February 22, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

---

[12]  Black's Law Dictionary gives the following definition of "minutes" based on parliamentary procedure: The formal record of a deliberative assembly's proceedings, approved (as corrected, if necessary) by the assembly. BLACK'S LAW DICTIONARY 1087 (9th ed. 2009).