# IN THE SUPREME COURT OF IOWA

No. 17–0752

Filed May 25, 2018

**PAUL J. BURROUGHS, KENNETH BURROUGHS, TERRI SPINNER, DAVID SPINNER, SEAN HARVEY,** and **TY HARVEY,**

Appellants,

vs.

**THE CITY OF DAVENPORT ZONING BOARD OF ADJUSTMENT, THE CITY OF DAVENPORT, IOWA,** an Iowa Municipal corporation, and **MZ. ANNIE-RU DAYCARE CENTER,** an Iowa Limited Liability Company,

Appellees.

---

Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.

Residents appeal the district court's dismissal of their petition for writ of certiorari seeking review of city zoning decisions upholding a conditional use permit for a daycare center. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Michael J. Meloy, Bettendorf, for appellants.

Brett R. Marshall of Lane & Waterman LLP, Davenport, for appellees Zoning Board of Adjustment and City of Davenport.

Ciara Vesey, Davenport, for appellee MZ Annie-Ru Daycare Center.

**MANSFIELD, Justice.**

This case requires us to interpret Iowa Code section 414.15, which requires a petition for writ of certiorari seeking review of a decision of a city zoning board of adjustment to be filed in district court "within thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15 (2015). We conclude that the thirty-day period is triggered when the board posts the decision on its public website. However, what is posted must be an actual *decision*. Proposed minutes that have not yet been approved do not constitute a decision. Our conclusion is supported by out-of-state appellate decisions where the same statutory terms were applied. For these reasons, we affirm the judgment of the district court in part, reverse it in part, and remand for further proceedings.

## I. Facts and Proceedings.

To operate a daycare facility in Davenport, one must obtain a special use permit from the Davenport Zoning Board of Adjustment. In March 2014, the Board of Adjustment granted Tiny Tots Learning Center (Tiny Tots) a permit to operate at 1112 Bridge Avenue. Tiny Tots had leased the premises from the landowner. Tiny Tots, however, closed its doors in December 2014. The property stood vacant from December 2014 to July 2016.

In July 2016, Mz. Annie-Ru Daycare Center (Annie-Ru), a new lessee of the premises, opened a daycare at the same location. Annie-Ru supervises more children and is open for longer hours than Tiny Tots.[1] The Davenport Zoning Administrator nonetheless determined the special use permit issued to Tiny Tots "run[s] with the land." Therefore, Annie-Ru

---

[1]Annie-Ru is open 24/7 and supervises up to 120 children per day.

was allowed to operate without having to apply for and obtain a new special use permit.

The following month, a nearby resident named Kenneth Burroughs and several other residents wrote the zoning administrator, challenging Annie-Ru's right to operate. In response, the zoning administrator reiterated his view that the special use permit ran with the land, that it was still valid, and that Annie-Ru's operations complied with that special use permit. He also advised the complaining residents they could appeal his decision to the Board of Adjustment. Burroughs and the others did so on September 7.

The residents' appeal came on for a public hearing before the Board of Adjustment on October 13. Burroughs and others who appeared argued that Tiny Tots' special use permit was not transferable to Annie-Ru. City staff disagreed. At the conclusion of the hearing, the Board of Adjustment voted 4–0 to uphold the City staff's recommendation. After the vote, the chairperson of the Board of Adjustment advised the complaining residents they could file a petition to revoke Annie-Ru's special use permit.

The minutes of the Board of Adjustment's October 13 meeting describe the appeal and then state as follows:

> Flynn presented the staff report. Staff position is that a Special Use Permit runs with the land and not with the applicant.
>
> Staff stated that notices were sent to 8 property owners within 200 feet of the subject property. Staff received 0 letters in opposition to the request.
>
> **Recommendation and Findings of Fact**
>
> City Staff stands by its interpretation that Mz. Annie-Ru Daycare Center LLC is legally entitled to operate under the provisions of the Special Use Permit issued to Tiny Tots Daycare and requests the Zoning Board of Adjustment uphold its decision.

The petitioner [(Burroughs)] addressed the Board and reiterated the request, claiming that Special Use Permits do not run with the land.

Numerous persons spoke in favor of the appeal (please see the video for name and addresses).

Two persons spoke against the appeal and in favor of staff's interpretation of the code.

One was the representative of the owner of 1112 Bridge Avenue and the other was City staff attorney Chris Jackson.

Attorney Chris Jackson quoted three separate zoning authorities on the topic which all confirmed that Special Use Permits do run with the land (and not the applicant).

**Motion:**

Reistroffer moved to uphold staff[']s recommendation. Woodard seconded the motion and it carried (4-0) on a roll call vote.

Strayhall, yes; Reistroffer, yes; Woodard, yes; and Hart, yes.

These minutes were posted on the City's website and available for public inspection in advance of the next meeting on October 27. However, when posted they had not been actually approved. Approval did not occur until the October 27 meeting.

On November 14, Burroughs and other nearby residents filed a petition to revoke Annie-Ru's special use permit.[2] The petition came on for a public hearing at the Board of Adjustment's December 8 meeting. Following discussion of various issues, the Board of Adjustment unanimously voted against revoking the special use permit.

The minutes of the Board of Adjustment's December 8 meeting summarize the petition to revoke and then contain the following information:

---

[2]Under the Davenport Municipal Code, a special use permit may be revoked after a public hearing where a petition of over twenty percent of the property owners located in the 200 feet notification area, stating valid reasons for additional review, is submitted to the board of adjustment. Davenport, Iowa, Municipal Code § 17.48.050 (2016).

Staff stated that notices were sent to adjacent owners within 200 feet of the subject property. Staff received 3 emails in support of the request.

**Recommendation and Findings of Fact**

**FINDINGS**

1. The location, design, construction and operation of the day care center adequately safeguard[] the health, safety, and general welfare of persons residing or working in adjoining or surrounding property.

2. The day care center does not impair an adequate supply of light and air to surrounding property.

3. The day care center does not unduly increase congestion in the streets, or public danger of fire and safety.

4. The day care center does not diminish or impair established property values in adjoining or surrounding property.

5. The day care center is in accord with the intent, purpose and spirit of the Zoning Ordinance and Davenport 2025: Comprehensive Plan for the City.

**RECOMMENDATION**

The Special Use Permit [(SUP)] is in compliance with the 'Criteria for Granting a Special Use Permit' and the conditions placed on the Permit at the time of granting. Based on this compliance and the Findings above, staff recommends that the revocation be denied.

The petitioner addressed the Board and reiterated the request.

Multiple persons spoke in favor of the request. Multiple persons spoke against the request, including the property owner and the daycare operator.

The Board discussed the request and the issues surrounding the neighborhood. There are two SUPs in the neighborhood, one at 1112 Bridge and the other at 1118 Bridge. The Board found that the issues have to do with enforcement of on-street parking regulations.

**Motion:**

Hart stated that the Board has the authority to impose conditions on SUP14-02, but that could be a separate matter from the revocation.

Reistroffer moved to revoke SUP14-02. Woodard seconded the motion and it failed (0-4) on a roll call vote.

Strahall, no; Reistroffer, no; Woodard, no; and Hart, no.

The December 8 meeting minutes were posted on the City's website and available for public viewing on December 19. However, when posted they had not yet been approved. Indeed, the agenda for the December 22 meeting included "[c]onsideration of the minutes from the December 8, 2016 public hearing" as one of the agenda items. Thus, approval of the December 8 minutes did not occur until the next Board meeting, on December 22. The minutes for the December 22 meeting reflect that this was the first action at that meeting and happened unanimously by voice vote. These minutes were not posted to the City's website until January 6, 2017.

On January 25, Burroughs and five other nearby residents filed a petition for writ of certiorari in the Iowa District Court for Scott County challenging the Board of Adjustment's October 13, 2016 and December 8, 2016 decisions. The City and the Board of Adjustment (hereafter collectively "the City") and Annie-Ru were named as defendants. On February 3, 2017, the City filed a motion to dismiss, asserting the petition for certiorari was untimely because it was not filed within thirty days of the challenged decisions.

The plaintiffs resisted the motion. They argued that a signed written decision with factual findings was necessary to trigger the thirty-day deadline for seeking certiorari review. Alternatively, they argued that even if minutes of the Board's meetings could be sufficient in some circumstances to start the thirty-day time period, the December 8 minutes were not properly filed at that time and did not become properly filed until early January 2017, within the thirty-day deadline. The plaintiffs also

supplemented their resistance with an affidavit from an individual who had visited the Davenport Planning Department on February 13 and asked to see "the official Board [of Adjustment] file on the Board's actions pertaining to real property located at 1112 Bridge Avenue . . . ." In response, the City had emailed a file that, according to the affiant, contained neither a written decision nor minutes relating to the October 13, 2016 and the December 8, 2016 decisions.

Following a hearing, the district court granted the City's motion on April 13. The court concluded that the "thirty day time period begins to run from the time the appealing party has either actual knowledge or is chargeable with knowledge of the decision to be appealed." Because it was "undisputed" that plaintiffs attended both the October 13 and the December 8 meetings, they had actual knowledge of the Board's decisions as of those dates: "[T]he Court cannot hold that they did not have actual knowledge or chargeable knowledge of the decision which they witnessed firsthand . . . ."

The plaintiffs appealed, and we retained the appeal.

**II. Standard of Review.**

Our review of a certiorari action is for correction of errors at law. *Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993). Furthermore, our review of a district court's ruling on a motion to dismiss is also for correction of errors at law. *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009) (reviewing a district court's grant of a motion to dismiss a petition for writ of certiorari for lack of subject matter jurisdiction).

**III. Analysis.**

In this appeal, each side has an initial and a fallback position. The City's first line of argument is that a party's *actual or constructive*

*knowledge* of a Board decision starts the thirty-day clock running, regardless of whether that decision has been filed (and regardless of whether that decision has even been reduced to writing). The plaintiffs' first line of argument is that a decision cannot start the appeal clock until it not only has been reduced to writing and properly filed, but *also has been signed and contains sufficient findings of fact.* In the event that our court accepts neither of these front-line arguments, the parties engage in a second-tier debate on what it means for a decision to be filed "in the office of the board."

**A. Does Actual or Constructive Knowledge of a Board Decision Start the Appellate Clock Running?** Iowa Code section 414.15 provides that a petition for certiorari seeking review of a board of adjustment decision "shall be presented to the court within thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15. On the other hand, the general certiorari rule, Iowa Rule of Civil Procedure 1.1402(3), states, "The petition must be filed within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1402(3). Additionally, in *Chrischilles*, we said,

> If the Chrischilles had a quarrel with the legality of the variance, they were obligated under section 414.15 to challenge it within thirty days. *See Arkae Dev., Inc. v. Zoning Bd.*, 312 N.W.2d 574, 577 (Iowa 1981) (time for taking an appeal under chapter 414 runs from time appealing party chargeable with knowledge of decision to be appealed).

505 N.W.2d at 494.

Relying on the text of rule 1.1402(3) and the foregoing excerpt from *Chrischilles*, the City maintains that a party's deadline for seeking certiorari review of a board of adjustment decision starts to run as soon as the party has actual or constructive knowledge of the decision, even if the decision is merely made orally at a meeting and not reduced to writing.

We are not persuaded. Iowa Code section 414.15 governs certiorari actions seeking review of board of adjustment decisions. It clearly provides a deadline of "thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15. In the event of conflict, this specific statute should prevail over the more general certiorari rule. *See id.* § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."); *see also* Iowa R. Civ. P. 1.101 ("The rules in this chapter shall govern the practice and procedure in all courts of the state, except where . . . statutes not affected hereby provide different procedure in particular courts or cases."); *In re Marriage of Thatcher*, 864 N.W.2d 533, 540 (Iowa 2015) (applying rule 1.101 to give effect to a more specific statute); *Wade Farms, Inc. v. City of Weldon*, 419 N.W.2d 718, 723 (Iowa 1988) ("[T]he rules of civil procedure do not apply in those cases in which statutes provide a different procedure.").

*Chrischilles*, in our view, does not countermand the clear text of Iowa Code section 414.15. In that case, the issue was whether the Chrischilles could challenge a decision to issue a zoning variance that had occurred fifteen months before the Chrischilles went to court. *See* 505 N.W.2d at 493. We said no, because the Chrischilles were "obligated under section 414.15 to challenge [the variance] within thirty days." *Id.* at 494. There was no suggestion in *Chrischilles* that the variance decision had *not* been filed in the office of the board of adjustment around the time it was made. *See id.*; *see also* Iowa Code § 414.15. So *Chrischilles* does not address the question before us today.

*Chrischilles* does include a parenthetical blurb on *Arkae Development* that the "time for taking an appeal under chapter 414 runs

from [the] time [the] appealing party [was] chargeable with knowledge of [the] decision to be appealed." *See Chrischilles*, 505 N.W.2d at 494 (citing *Arkae Dev.*, 312 N.W.2d at 577). But this parenthetical is too broad for what *Arkae Development* actually held. *Arkae Development* involved an appeal from a city official to a zoning board of adjustment, not from a board of adjustment to a court. 312 N.W.2d at 575, 577. In that event the relevant statute is not Iowa Code section 414.15, but section 414.10, which provides that appeals to boards of adjustment "shall be taken within a reasonable time as provided by the rules of the board." *See id.* at 576 (quoting Iowa Code § 414.10). The board in *Arkae Development* had adopted a rule that appeals "must be perfected to the Board not later than thirty (30) days after the decision complained of." *Id.* at 575. We construed this rule as having "an implied provision that the thirty-day period runs from the date that the person appealing had actual knowledge or was chargeable with knowledge of the decision appealed from and of the facts forming the basis of his objection." *Id.* at 577. So *Arkae Development* is not on point, either.[3]

In sum, we believe the plain language of Iowa Code section 414.15 controls here, not the text of rule 1.1402(3) or our prior decisions in *Chrischilles* and *Arkae*. An aggrieved party has "thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15.

---

[3]Another one of our prior cases that does not speak to the present controversy is *City of Johnston v. Christenson*, 718 N.W.2d 290 (Iowa 2006). There we quoted Iowa Code section 414.15 and said, "Petitions for writ of certiorari must be filed within thirty days from the time of the board action." *Id.* at 303 n.5. We found the City's petition timely because it had filed four days after the board issued a revised decision on reconsideration. *Id.* *Christenson* thus did not require us to decide whether an appeal would be timely if taken more than thirty days after a party knew of a board decision but less than thirty days after that decision had been "fil[ed] . . . in the office of the board." *See* Iowa Code § 414.15.

**B. Must a Decision Be Signed and Contain Sufficient Findings of Fact to Start the Appellate Clock Running?** Having decided that the City's front-line position is incorrect, we will now turn to the plaintiffs' front-line position. They argue that a decision must meet certain formalities, including factual findings, in order to start the appeal deadline running under Iowa Code section 414.15.

The plaintiffs call our attention to *Citizens Against Lewis & Clark (Mowery) Landfill v. Pottawattamie County Board of Adjustment*, 277 N.W.2d 921 (Iowa 1979). That case involved a grant of a conditional use permit by the Pottawattamie County Board of Adjustment for the operation of a sanitary landfill. *Id.* at 922. We set aside the board's decision, finding that the county board's failure to adopt procedural rules as required by Iowa Code section 358A.12—now section 335.12[4]—necessitated a new hearing. *Id.* at 923–24. We went on to discuss the separate issue of findings of fact:

> In view of this finding, it is unnecessary to rule on the specific objections raised by plaintiffs concerning the manner in which this hearing was conducted. However, we believe the question concerning the board's duty to make written findings merits discussion. There is no statutory requirement that the board do so. However, there is no doubt such findings would be of great benefit, both to the trial court and to this court on certiorari or appeal from the board's decisions. They would provide a ready basis for determining the reasons for the board's action and would help immeasurably in determining whether the result was reasonable or was, as is frequently claimed, arbitrary and capricious. It would also serve the additional purpose of sharpening the issues the parties should raise on appeal.
>
> . . . .

---

[4]Iowa Code chapter 335 relates to county zoning. It contains a number of provisions analogous to those in chapter 414 relating to city zoning. *Compare* Iowa Code § 335.12 ("Rules"), *and id.* § 335.18 ("Petition to court"), *with id.* § 414.9 ("Rules—meetings—general procedure"), *and id.* § 414.15 ("Petition for certiorari").

These are compelling considerations which have persuaded us to adopt the rule that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding. Such findings must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted. This rule shall apply to board of adjustment proceedings after the date this opinion is filed.

*Id.* at 925 (citations omitted).

The City responds that the written findings requirement announced in *Citizens* was qualified somewhat in a subsequent city zoning case. *See Bontrager Auto Serv. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 489– 90 (Iowa 2008). *Bontrager Auto Service* indicated that "substantial compliance" was sufficient and that the lack of written findings on one of the relevant issues was "not a fatal flaw." *Id.*

The plaintiffs add that the requirement for written findings not only comes from our caselaw but also is part of the Davenport Municipal Code. In particular, Davenport Municipal Code section 17.52.020(B) requires,

The board shall keep minutes of its proceedings showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall also keep records of its hearing and other official actions. Findings of facts shall be included in the minutes of each case of requested variation and the reasons for recommending or denying such variation shall be specified. Every rule or regulation, every amendment or repeal thereof, and every order, requirement, decision or determination of the board shall be filed immediately in the office of the board and shall be a public record.

Davenport, Iowa, Municipal Code § 17.52.020(B). The City responds that the minutes of the Board of Adjustment complied with section 17.52.020(B).

More tellingly, the City responds that the *timeliness* of a certiorari petition is a matter expressly governed by Iowa Code section 414.15 and is a separate question from the *completeness* of the decision being reviewed. That is, once a party seeking judicial review files a timely

petition, the party can raise deficiencies in the underlying decision, including the absence of sufficient findings. But a timely petition comes first.

We agree with the City. A timely appeal is necessary to confer jurisdiction on the district court. *See City of Des Moines v. City Dev. Bd.*, 633 N.W.2d 305, 309 (Iowa 2001) ("A timely petition for judicial review from an administrative decision is a jurisdictional prerequisite."); *Wegman v. City of Iowa City*, 279 N.W.2d 261, 263–64 (Iowa 1979) (finding the district court lacked jurisdiction over an untimely assessment appeal). Here the statute allows thirty days to appeal from "the filing of the decision in the office of the board." Iowa Code § 414.15. It does not require that the decision be in any particular form or format, so long as it has been "fil[ed] . . . in the office of the board." *Id.*; *see also Build-A-Rama v. Peck*, 475 N.W.2d 225, 229 (Iowa Ct. App. 1991) (stating in a county zoning case that "[t]he time to question the decision of the board and its failure to make adequate findings was by way of appeal in the manner prescribed by statute").

By way of analogy, in *Bauman v. Maple Valley Community School District*, we held that a petition seeking judicial review of the outcome of an election contest was untimely. 649 N.W.2d 9, 16 (Iowa 2002). There the statute provided, "The party against whom judgment is rendered may appeal within twenty days to the district court . . . ." *Id.* at 12 (quoting Iowa Code § 62.20 (2001)) (emphasis omitted). Applying that statute as it was written, we held that the judgment had been "rendered" when it was orally and publicly announced by the contest court on February 21, not when the ensuing written judgment had been signed by all three contest judges on February 25. *Id.* at 12, 16. We noted that "[r]endition of judgment and entry of judgment are two distinct acts." *Id.* at 14. Iowa

Code section 414.15 is worded differently from section 62.20, but the point remains that we look to the actual text of the provision governing judicial review to determine whether an appeal has been filed in a timely manner so as to confer jurisdiction.

Other courts agree that the time for appeal from a zoning decision runs from the date of the decision, regardless of the alleged adequacy of any findings of fact. *See Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 871 N.E.2d 376, 383 (Ind. Ct. App. 2007); *Build-A-Rama*, 475 N.W.2d at 229; *Woodward v. Town of Newfield*, 634 A.2d 1315, 1317 (Me. 1993); *92 MM Motel, Inc. v. Zoning Bd. of Appeals*, 90 A.D.3d 663, 664 (N.Y. App. Div. 2011); *Thorn v. City of Chester*, 49 Pa. D. & C.2d 312, 315–17 (Pa. C.P. Delaware Cty. 1970). Notably, the *Thorn* court held that a decision without findings "d[id] not preclude or prevent an appeal, or extend any of the time limitations of the act," *even though* Pennsylvania law expressly required each decision to be accompanied by findings of fact. *Thorn*, 49 Pa. D & C.2d at 314, 317.[5]

There are sound policy reasons for this approach. The deadline to petition the district court for a writ of certiorari ought to be as clear as possible. Plaintiffs, however, would subject the determination of that deadline to the unpredictable outcome of a debate over the sufficiency of factual findings.

Significantly, our certiorari rule requires the petition to be filed "within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1402(3).

---

[5]*In re CAFRA Permit No. 87–0959–5 Issued to Gateway Associates* is not to the contrary. *See* 704 A.2d 1261 (N.J. 1997). *CAFRA* involved review of a state agency, not a zoning matter, and the New Jersey Supreme Court found that the plaintiff had waited too long to appeal the "final agency decision." *Id.* at 1267–68. The court's analysis turned on finality, not on whether the agency decision had adequate findings or not. *Id.* The court found that a November 1986 letter was sufficient to trigger the appeal deadline. *Id.*

Plaintiffs' interpretation of "decision" as including only those decisions supported by sufficient findings of fact would create a stark conflict between Iowa Code section 414.15 and Iowa Rule of Civil Procedure 1.1402(3), a circumstance we normally try to avoid.

**C. When Is a Decision "Fil[ed] . . . in the Office of the Board"?**
We now turn to what we believe to be the dispositive issue in this appeal— when is a decision actually "fil[ed] . . . in the office of the board"? Iowa Code § 414.15.

First, we believe that to be *filed*, a decision cannot be simply oral. It must exist in some documentary form. To file something is "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record" or "[t]o record or deposit something in an organized retention system or container for preservation and future reference." *File, Black's Law Dictionary* (10th ed. 2014). Official minutes can, of course, be used to memorialize a decision. Indeed, the Davenport Municipal Code appears to contemplate that procedure. *See* Davenport, Iowa, Municipal Code § 17.52.020(B). But there must be some type of document that is filed.

Second, the decision can be filed in electronic rather than paper form. The general assembly has adopted the Uniform Electronic Transactions Act. *See* Iowa Code ch. 554D. Its purpose is "[t]o facilitate electronic transactions consistent with other applicable law." *Id.* § 554D.107(1). It provides that "[a] record . . . shall not be denied legal effect or enforceability solely because it is in electronic form." *Id.* § 554D.108(1). The term "transaction" includes "an action or set of actions occurring between two or more persons relating to the conduct of . . . governmental affairs." *Id.* § 554D.103(16). "Person" is broadly defined to mean, among other things, an individual or governmental agency. *Id.*

§ 554D.103(12). Furthermore, Iowa Code section 554D.120 empowers—indeed requires—

> a governmental agency of this state other than a state executive branch agency, department, board, commission, authority, or institution, [to] determine whether, and the extent to which, [it] . . . will create, generate, communicate, store, process, use, and rely upon electronic records.

*Id.* § 554D.120(1).

In *State v. Fischer*, we held that even though the implied-consent law required a "written request" to the driver, this could be met by showing the driver a computer screen. *See* 785 N.W.2d 697, 704–06 (Iowa 2010). We relied on the Uniform Electronic Transactions Act as well as the definition of "written" in Iowa Code section 4.1(39), which "include[d] an electronic record as defined in section 554D.103." *Id.* at 702–03 (quoting Iowa Code § 4.1(39) (2007)). Here the law does not even require a written decision; it just requires a decision that has been filed in the office of the board. *See* Iowa Code § 414.15 (2015).

Our own branch uses electronic records, not hardcopy records, to meet a statutory requirement that a specific "record book" be "kept by the [district court] clerk." *See* Iowa Code § 602.8104(2)(*a*). In *Judicial Branch v. Iowa District Court*, we considered this statute, which says in relevant part,

> The following books shall be kept by the clerk:
>
> a. A record book which contains the entries of the proceedings of the court and which has an index referring to each proceeding in each cause under the names of the parties, both plaintiff and defendant, and under the name of each person named in either party.

800 N.W.2d 569, 575 (Iowa 2011) (quoting Iowa Code § 602.8104(2) (Supp. 2009)), *superseded by* Iowa Code § 901C.2 *on other grounds as stated in State v. Doe*, 903 N.W.2d 347, 351, 354 (Iowa 2017). We noted that by

September 1997 all counties were using electronic records to meet this longstanding requirement to maintain docket books. *Id.* at 575. This was seven years before the legislature authorized the supreme court to prescribe rules relating to electronic filing. *See* 2006 Iowa Acts ch. 1174 § 5 (codified at Iowa Code § 602.1614 (2007)). The computerized version of the docket is the only docket. *See Judicial Branch*, 800 N.W.2d at 577.

Third, we believe that a document has been filed in the "office of the board" when it has been posted on the board's publicly available website that the board uses as a repository for official documents. In this regard, we are guided by our earlier decision in *Holding v. Franklin County Zoning Board of Adjustment*, 565 N.W.2d 318 (Iowa 1997). *Holding* involved the counterpart to Iowa Code section 414.15 for parties bringing court challenges to county zoning actions. *See id.* at 320; *see also* Iowa Code § 335.18 (2015) (similarly requiring the petition to be presented to the court "within thirty days after the filing of the decision of the board"). There we upheld the trial court's determination that a zoning administrator's private residence could be "the office of the board" in a situation where the board had not designated an official office and official papers were being stored there. *See* 565 N.W.2d at 320. As we put it, "[N]othing in Code chapter 335 . . . requires zoning board records to be kept in a public building." *Id.*

The lesson we draw from *Holding* is that the office of the board is not strictly a matter of geography. If a private home can be deemed an office of the board, a public website that is maintained and controlled by the board and used as a clearinghouse for official documents can likewise be deemed an office of the board—even if the server for that website happens to be located outside the board's regular physical offices.

But there are some limits to this principle. Given the circumstances in *Holding*, we decided that an appeal that had been taken *after* the board had voted to approve the conditional use permit but *before* a signed, written decision had been filed should be considered timely. *Id.* at 321. We emphasized that the county zoning statutes required records of official actions to be "immediately" filed in the office of the board, and where this had not occurred, the plaintiffs could not be faulted for filing their petition for writ of certiorari too soon. *Id.* (quoting Iowa Code § 335.12 (1995)).

Notably, the city zoning statutes contain the same immediate filing requirement. They provide in part,

> The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record.

Iowa Code § 414.9 (2015).

Also, in *Purethane, Inc. v. Iowa State Board of Tax Review*, which involved an administrative appeal under Iowa Code section 17A.19, we concluded,

> In the absence of a file or entry system by which the public and parties to a controversy before the board of tax review can learn of the board's decision, due process requires the statutory appeal period begins to run when the board decision is officially made available as a public record.

498 N.W.2d 706, 710 (Iowa 1993).

So where does this leave us? We agree with the City that the posting of minutes to the Board's official website setting forth the Board's decision can constitute the "filing of the decision in the office of the board." However, the plaintiffs raise a valid point concerning the *status* of those minutes. What the Board initially posted on its website following each

Board meeting were unapproved, and therefore unofficial, minutes. Those minutes were not approved until the subsequent meeting of the Board and that approval was not shown on the website until sometime thereafter. We believe the City cannot rely on the posting of an item it reserves the right to change, such as unapproved minutes that are subject to revision, as "the filing of the decision." *See* Iowa Code § 414.15.

A Louisiana decision is on point. *See Aucoin v. City of Mandeville*, 552 So. 2d 714 (La. Ct. App. 1989). While zoning statutes vary from state to state, Louisiana law is the same as Iowa's. It requires the petition to be "presented to the court within thirty days after the filing of the decision in the office of the board." *Id.* at 716 (quoting La. Rev. Stat. Ann. § 33:4727(E)(1)). The Louisiana Court of Appeal found that the latest date for challenging a zoning board decision was not thirty days after the meeting where the decision was made, but thirty days after the meeting where the minutes of that meeting were approved. *Id.* at 717.

Even more on point is a Texas case also decided under essentially the same statutory language. *See Sanchez v. Bd. of Adjustment*, 387 S.W.3d 745 (Tex. App. 2012). In *Sanchez*, an administrative assistant created a digital audio recording of an October 5, 2009 meeting. *Id.* at 749. Sometime thereafter, the assistant transferred the digital recording to a CD. *Id.* Within a week of October 5, the assistant transcribed minutes using her work laptop and saved the document on her laptop. *Id.* at 749–50. Finally, on October 19, the board of adjustment approved those October 5 minutes and the assistant posted them on-line so they could be viewed by the public. *Id.* at 750.

Texas law requires a petition to be filed "within 10 days after the date the decision is filed in the board's office." *Id.* at 751 (quoting Tex.

Local Gov't Code Ann. § 211.011(b)). In that case, the allegedly untimely petition had been filed on October 28. *Id.* at 747.

The Texas Court of Appeals first considered what amounts to a "decision." *Id.* at 751. It held that an electronic recording of the meeting was not a decision. *Id.* at 751–53. Rather, "the term 'decision' means the board of adjustment's minutes reflecting a vote on a particular question and the records related to that decision." *Id.* at 753.

Next, the court turned to the question of when the decision had been "filed in the board's office." *Id.* The court held that unapproved minutes stored on the assistant's work laptop could not be considered filed. *Id.* Instead, filing occurred when the minutes had been approved and posted on-line on October 19. *Id.* at 754. Accordingly, a petition filed on October 28 was timely. *Id.*; *see also Sun Oil Co. v. Bd. of Zoning Appeals*, 223 N.E.2d 384, 386 (Ohio C.P. Lake County 1966) ("The act of filing the minutes incorporating a decision of a Board of Zoning Appeals, following its approval of them, is essential to begin the running of the . . . appeal period.").

Here the plaintiffs sought certiorari review of two separate Board actions—(1) its recognition of Annie-Ru's special use permit and (2) its later refusal to revoke that permit. The first action occurred at an October 13, 2016 Board meeting; the second at a December 8, 2016 Board meeting. The plaintiffs did not file suit until January 25, 2017. However, we conclude the challenge to the refusal to revoke the permit is timely because the unapproved minutes of the December 8, 2016 meeting posted to the Board's website on December 19 do not amount to "the filing of the decision." *See id.* On the other hand, the plaintiffs do not contest that the minutes of the October 13 Board meeting had been posted, that they had been approved, and that the approval had been posted on the Board's

website more than thirty days before the plaintiffs went to court. This portion of the plaintiffs' challenge is therefore untimely.[6]

### IV. Conclusion.

For the foregoing reasons, we reverse the district court's order to the extent it dismissed the challenge brought by Burroughs and other residents to the Board of Adjustment's refusal to revoke Annie-Ru's special use permit. We affirm that order to the extent it dismissed their challenge to the Board's initial recognition of that special use permit. We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Appel and Wiggins, JJ., who concur in part and dissent in part, and Hecht and Waterman, JJ., who take no part.

---

[6]We further note that the Board of Adjustment's use of web-posted meeting minutes as its method of filing decisions has had two effects. First, it has meant that filing does not occur "immediately" after the decision is made as required by Iowa Code section 414.9. Second, it has resulted in some uncertainty as to when filing actually occurs, as illustrated by this case. Those parallel the two difficulties noted in *Holding*, 565 N.W.2d at 321. Accordingly, we believe that as in *Holding* a petition for certiorari filed after the meeting in question and "anytime until thirty days after filing of the board's decision" would be timely. *See id.* In other words, the window to file *closes* thirty days after minutes reflecting the decision are filed, the minutes have been approved, and the approval has been posted, but the window *opens* once the decision has been made.

#17–0752, *Burroughs v. City of Davenport Zoning Bd. of Adjustment*

**APPEL, Justice (concurring in part and dissenting in part).**

This case involves the proper interpretation of Iowa Code section 414.15 (2015), which governs challenges to decisions of the Board of Adjustment (Board). *See Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993). This section requires a party to file a petition for writ of certiorari in the district court "within thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15.

The Davenport Municipal Code section 17.52.020(B) (2016) relates to the filing of the Board decisions. It states,

> The board shall keep minutes of its proceedings showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact and shall also keep records of its hearing and other official actions. Findings of facts shall be included in the minutes of each case of requested variation and the reasons for recommending or denying such variation shall be specified. Every rule or regulation, every amendment or repeal thereof, and every order, requirement, decision or determination of the board shall be filed immediately in the office of the board and shall be a public record.

Davenport, Iowa, Municipal Code § 17.52.020(B).

The majority concludes the posting of the official, approved minutes of testimony on the Board's public website would trigger the thirty-day appeal period. The bare-bones minutes from the October 13, 2016 meeting lacks findings and merely contains conclusions. The minutes from the December 8, 2016 meeting fare slightly better in that it contains some findings. The plaintiffs do not contest that the Board approved the minutes from the October 13 meeting. On the other hand, the Board had not approved the minutes from the December 8 meeting until December 22 and the Board had not posted the minutes on-line until January 6, 2017. Because proposed minutes do not constitute a decision, the

majority finds the challenge based on the December minutes timely. The majority, however, finds the challenge based on the October minutes untimely. I cannot agree that the minutes constitute a filed decision within the meaning of section 414.15.

I begin with some preliminary concepts. We often resolve ambiguities as to whether an appeal is timely in favor of the party seeking judicial review of the Board's decision. *K & J Assocs. v. City of Lebanon*, 703 A.2d 253, 255 (N.H. 1997); *accord* 3 Arden H. Rathkopf et al., *The Law of Zoning and Planning* § 62:14, Westlaw (4th ed. database updated Apr. 2018) [hereinafter Rathkopf]. As a case in point, in an instructive case called *Chester Township Board of Trustees v. Kline*, the Ohio Court of Appeals resolved the ambiguity in favor of the party seeking judicial review. *See* 249 N.E.2d 921, 924 (Ohio Ct. App. 1997). There the court examined a statute that mandated a party seeking judicial review to appeal within ten days after the entry of the matter for review. *Id.* at 923. Although the language of the statute in *Kline* is different from that of Iowa Code section 414.15, I find the principles undergirding the holding in *Kline* instructive here.

In *Kline*, the court addressed the issue of "[w]hat is the date of [the] entry of the matter for review?" *Id.* at 924. The court reasoned, "A litigant ought not suffer the consequences of a procedure that is so loose and indefinite. . . . [W]hat is more important than a filing date when the jurisdiction of a reviewing court depends solely upon it?" *Id.* It further reasoned, "[N]ot to take an arbitrary stand until the board itself makes it clear to litigants when matters are entered, would indeed do violence to the right of review." *Id.* The court therefore held the date of the entry of the matter for review was the date on which the appellant received the board's decision, instead of the date of the board's letter advising him that

the board had voted to deny his appeal and would forward him a copy of the decision within thirty days. *Id.* at 923–24. As in *Kline*, I am inclined to find an appeal timely when there are ambiguities as to whether an appeal of a board decision is timely.

In addition, it is well established that a decision must be a final determination of the parties' rights in the case. *See Elbert County v. Sweet City Landfill, LLC*, 774 S.E.2d 658, 663 (Ga. 2015); *Landrum v. City of Omaha Planning Bd.*, 899 N.W.2d 598, 608–09 (Neb. 2017); *see also* 3 Rathkopf § 62:6 (collecting cases); *cf. Chrischilles*, 505 N.W.2d at 493 ("In the absence of a challenge, the order granting the variance became final."). A decision untethered to the necessary predicate findings of fact and conclusions of law is not final.

The most important question, however, is what constitutes a "decision." If reasonable minds could differ as to the meaning of a statutory term, the term is ambiguous. *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). When interpreting ambiguous statutes, we attempt to give effect to legislative intent by resorting to the principles and tools of statutory construction. *See Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 477 (Iowa 2018). We refrain from construing statutes that would lead to "impractical, unreasonable, or absurd results." *In re S.M.D.*, 569 N.W.2d 609, 611 (Iowa 1997); *accord State v. Doe*, 903 N.W.2d 347, 353 (Iowa 2017) ("Generally, we try to interpret statutes so they are reasonable and workable." (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 473 (Iowa 2017))). "Among the most venerable of the canons of statutory construction is the one stating that a statute should be given a sensible, practical, workable, and logical construction." *Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 317 (Iowa 2013) (quoting *Walthart v. Bd. of Dirs.*, 667 N.W.2d 873, 877–78 (Iowa 2003)); *accord State v. Nicoletto*, 862 N.W.2d

621, 624 (Iowa 2015) ("A sensible, logical construction is the goal . . . ." (quoting *City of Janesville v. McCartney*, 326 N.W.2d 785, 787 (Iowa 1982))); *Yeager v. Unemployment Comp. Bd. of Review*, 173 A.2d 802, 807–08 (Pa. Super. Ct. 1961) (stating courts must always consider "good sense and practical utility" in construing any act that requires construction (quoting *In re Sunday Movie in City of Pottsville*, 70 A.2d 651, 655 (Pa. 1950))).

In *In re CAFRA Permit No. 87–0959–5 Issued to Gateway Associates*, the New Jersey Supreme Court stated a determination by an agency lacking in adequate factual findings and legal conclusions is not a final decision for appeal purposes under the applicable court rule. 704 A.2d 1261, 1267 (N.J. 1997). The court cited to *DeNike v. Board of Trustees*, 170 A.2d 12 (N.J. 1961), to support its holding. In *DeNike*, the court reasoned, "[B]efore a litigant's right [that] turns on a question of law is barred, there ought to be a formal hearing and adjudication on the question with appropriate written conclusions of law and fact." *Id.* at 15 (quoting *Schack v. Trimble*, 145 A.2d 1, 6 (N.J. 1958)). Furthermore, the court reasoned, "[T]he process by which such right is determined . . . ought to be of such a nature as to fully impress upon the litigant . . . the precise grounds upon which relief was denied." *Id.* (quoting *Schack*, 145 A.2d at 6–7).

"Decision" may also mean "a determination arrived at after consideration." *Decision, Webster's Third New International Dictionary* (unabr. ed. 2002). "Decision" may be considered synonymous with "conclusion." *Id.* The Pennsylvania Court of Common Pleas in *Thorn v. City of Chester* employed this interpretation of decision. 49 Pa. D. & C.2d 312, 315–17 (Pa. C.D. Delaware Cty. 1970); *see also Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 871 N.E.2d 376, 383 (Ind. Ct. App. 2007)

(holding the board issued its decision on December 20, 2005, even though the board did not issue written findings of fact because the plaintiffs were aware of the December 20 decision); *Biggs v. Bd. of Zoning Appeals*, 448 N.E.2d 693, 694 (Ind. Ct. App. 1983) (holding the date of the board's decision is the date of the first meeting at which the board denied the variance request, not the date of the second meeting at which the board approved the minutes of the first meeting because the minutes "are not the event, but a record of the transpired event"); *Woodward v. Town of Newfield*, 634 A.2d 1315, 1317 (Me. 1993) (holding the board rendered its decision when it cast its public vote, not when it issued its written notice of the decision and findings of fact); *Kennedy v. Zoning Bd. of Appeals*, 585 N.E.2d 369, 370 (N.Y. 1991) (holding the filing of the minutes reflecting the board's vote begins the running of the statute of limitations); 92 *MM Motel, Inc. v. Zoning Bd. of Appeals*, 90 A.D.3d 663, 664 (N.Y. App. Div. 2011) (holding the minutes is the board's decision and the filing of those minutes begins the statutory clock). *But see First Ave. Partners v. City of Pittsburgh Planning Comm'n*, 151 A.3d 715, 722 (Pa. Commw. Ct. 2016) (holding zoning decisions are not final until the commission issues a written decision, and until it issues a written decision, there is no decision to appeal).

The Pennsylvania Court of Common Pleas in *Thorn* reached a different conclusion than the New Jersey Supreme Court did in *CAFRA*. In *Thorn*, the plaintiff argued the board did not a render a decision because it lacked findings of fact, conclusions, and reasons. 49 Pa. D. & C.2d at 315. The court examined the language of the statute, which provided, "The board . . . shall render a written decision . . . within forty-five days. Each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor." *Id.* at 314 (emphasis

omitted) (quoting 53 Pa. Stat. and Cons. Stat. Ann. § 10908). Disagreeing with the plaintiff, the court reasoned, "A 'decision' is the final judgment, decree, or order of a competent tribunal . . . . The decision is not the accompanying findings, conclusions, and reasons . . . ." *Id.* at 315. In contrast, the court reasoned, "An 'opinion' is the reason given for the decision or judgment." *Id.* The court further reasoned "accompany" means "to attend, supplement, go with, add to, and convoy, escort, or be a companion to" such that "[t]he word is not defined as being a part of a principal thing itself." *Id.* at 316. In other words, "[a]n escort, convoy, supplement, or addition need not always be immediately standing with or intertwined with the principal." *Id.* The court therefore concluded the relevant statute does not require the board to render the decision and the accompanying findings of fact, conclusions, and reasons simultaneously. *Id.*

This case is distinguishable from *Thorn.* The court in *Thorn* defined "decision" in context of the applicable statute. Specifically, the Pennsylvania legislature explicitly distinguished "decision" from accompanying findings of fact and conclusions. Thus, to give effect to the legislature's intent, the court treated the decision as separate and distinct from the findings of fact, reasons, and conclusions. On the other hand, Iowa Code section 414.15 simply provides "within thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15. The statute shows our legislature did not separate the decision from the accompanying findings of fact and conclusions of law.[7]

---

[7]When applying the tools of statutory construction, it is invaluable to exercise care in order to examine, not glance at, the language of the applicable statutes. In *Beckford v. Town of Clifton,* the Supreme Judicial Court of Maine examined the relevant statute, which states, "Any party may take an appeal within 45 days of the date of the vote on the original decision . . . ." 107 A.3d 1124, 1127 (Me. 2014) (quoting Me. Stat. tit. 30-a, § 2691(3)(G) (2014)). The court reasoned section 2691 clearly provides that "the

The question is whether we should follow the approach in *CAFRA* or that in *Thorn* to interpret the term "decision" in section 414.15. We should give the statute a practical construction. The need for a practical construction is especially true in contested cases in which the parties partake in an evidentiary hearing. *See Polk County v. Iowa State Appeal Bd.*, 330 N.W.2d 267, 277 (Iowa 1983) (defining contested case within the meaning of the Iowa Administrative Procedure Act (IAPA)). The purpose of an evidentiary hearing is to "determine disputed facts of particular applicability known as adjudicative facts—the who, what, when, where, and why of particular individuals in specified circumstances." *Id.* (defining evidentiary hearing within the meaning of the IAPA). I am not inclined to require attorneys and judges to sift the minutes to locate the relevant facts, reasons, legal principles, and conclusions.

In *Citizens Against Lewis & Clark (Mowery) Landfill v. Pottawattamie County Board of Adjustment*, we emphasized the importance of making written findings. 277 N.W.2d 921, 925 (Iowa 1979). There the plaintiffs challenged the board's affirmance of a grant of a conditional use permit for the operation of a sanitary landfill. *Id.* at 922. We addressed the issue of making findings, which I quote in full because of its importance:

> [W]e believe the question concerning the board's duty to make written findings merits discussion. There is no statutory requirement that the board do so. However, there is no doubt such findings would be of great benefit, both to the trial court and to this court on certiorari or appeal from the

---

vote" begins the statutory clock for filing an appeal and does not include language that the board must accompany its vote with the issuance of a written decision. *Id.* The court further reasoned that "the issuance of written findings is an event that is distinct from the vote itself." *Id.* at 1128. Thus, even when an ordinance requires the board to issue a written decision, the court concluded the appeal period begins with the board's final public vote. *Id.* at 1128–29. In contrast to the statute under examination in *Beckford*, our legislature did not use the term "vote" in Iowa Code 414.15. Thus, the legislature could not have intended the Board's public vote to stand in for the decision. The legislature also could not have intended for such vote to begin the appeal period.

board's decisions. *They would provide a ready basis for determining the reasons for the board's action and would help immeasurably in determining whether the result was reasonable or was, as is frequently claimed, arbitrary and capricious. It would also serve the additional purpose of sharpening the issues the parties should raise on appeal.*

. . . .

The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. *The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.*

These are compelling considerations which have persuaded us to adopt the rule that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding. *Such findings must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted.* This rule shall apply to board of adjustment proceedings after the date this opinion is filed.

*Id.* at 925 (emphases added) (citations omitted) (quoting K. Davis, *Administrative Law* § 16.05 (2d ed. 1978)).

In simpler terms, the efficient and orderly function of the process of meaningful judicial review requires the Board to lay out clearly the basis on which its conclusions rest. *See Topanga Ass'n for a Scenic Cmty. v. County of Los Angeles*, 522 P.2d 12, 19 (Cal. 1974) ("Vigorous and meaningful judicial review facilitates, among other factors, the intended division of decision-making labor."). A decision with factual findings, reasons, legal principles, and conclusions will help reviewing courts ascertain the rationale behind and the basis for the Board's action, enable the parties to determine whether and on what grounds they should seek review, and minimize inefficient fishing in the record. *See id.* at 16.

Additionally, our standard of review in certiorari actions is for correction of errors at law. *Stream v. Gordy*, 716 N.W.2d 187, 190 (Iowa 2006). Under this standard, we accept the Board's well-supported factual findings as binding but give no deference to its legal conclusions. *See State Pub. Def. v. Iowa Dist. Ct.*, 886 N.W.2d 595, 598 (Iowa 2016). It would be impractical for us to defer to the Board's factual findings when none exist in the first place, such as in the October 13 minutes.

Moreover, in our review of a certiorari action, we consider whether the Board's decision was illegal. "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). The Board has made an illegal decision if "[it] has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary, or capricious." *Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 64 (Iowa 2001) (quoting *Norland v. Worth Cty. Comp. Bd.*, 323 N.W.2d 251, 253 (Iowa 1982)). "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.' " *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.*, 526 N.W.2d 284, 287 (Iowa 1995) (quoting *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987)). We are not at liberty to substitute our judgment for that of the Board "[i]f one of the grounds of alleged illegality is arbitrary, unreasonable or discriminatory action on the part of the board, and on the facts[,] the reasonableness of the board's action is open to [a] fair difference of opinion." *Anderson v. Jester*, 206 Iowa 452, 463, 221 N.W.2d 354, 359 (1928); *accord Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 413 (Iowa 2003). Without findings, it is questionable how reviewing courts could apply the substantial evidence standard to determine illegality.

Lastly, the consequences of foregoing the requirement of findings in a decision that triggers the running of the appeal period for judicial review are undesirable:

> If no findings are made, and if the court elects not to remand, its clumsy alternative is to read the record, speculate upon the portions which probably were believed by the board, guess at the conclusions drawn from credited portions, construct a basis for decision, and try to determine whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record.

*Fields v. Kodiak City Council*, 628 P.2d 927, 933 n.7 (Alaska 1981) (quoting 3 R. Anderson, *American Law of Zoning* § 20.41, at 540 (2d ed. 1977)).

The City argues Iowa Code section 414.15 expressly governs the timeliness of a certiorari petition, and the question of the completeness of the decision is a separate issue. The thrust of the City's argument is that even when findings may be required, the lack thereof may not toll the statutory period to appeal the Board's decision. A party seeking judicial review must first file a timely petition in order to raise deficiencies in the underlying decision.

A timely appeal is necessary for jurisdictional purposes. *See City of Des Moines v. City Dev. Bd.*, 633 N.W.2d 305, 309 (Iowa 2001). Even a deficient decision, however, should contain *some* findings "to expose the mode of analysis" such that the party seeking judicial review may "specify[] the grounds of the illegality." Iowa Code § 414.15 (second quote); *Fields*, 628 P.2d at 934 n.9 (first quote). Findings should be *sufficient* to inform the involved parties, especially the party seeking judicial review, of the reasons for the decision. I now turn to *Fields*, which addressed the issue of whether substantial evidence supported the board's decision to deny a variance request, to elaborate this point.

In *Fields*, the Alaska Supreme Court observed that the statute governing appeals from board decisions "requires an aggrieved party seeking review to specify the grounds for the appeal." 628 P.2d at 933. Because the party must state definitely and in detail the basis for the appeal, "[a] board's failure to provide findings, that is, *to clearly articulate the basis of its decision*, precludes an applicant from making the required specification and thus can deny meaningful judicial review." *Id.* (emphasis added). Although the statute did not expressly require the board to delineate findings, the court found such a requirement "implicit in [the statute]" in order to "bridge the analytical gap between the raw evidence and the ultimate decision or order." *Id.* Applying this reasoning to the facts of the case, the court stated the board did not set forth findings but simply voted to deny the variance request during a hearing. *Id.* at 934. As such, the court could not determine the rationale supporting the board's denial of the variance request. *Id.* Accordingly, the court concluded the lower court erred in ruling that substantial evidence supported the board's denial. *Id.*

Applying the principles espoused in *Fields* to this case, I would find that a decision must at least contain some findings such that an aggrieved party may properly raise deficiencies in a decision by "specifying the grounds of the illegality"—as required by Iowa Code section 414.15—within the thirty-day appeal period. Otherwise, the party would have no access to meaningful judicial review. *Compare Fields*, 628 P.2d at 931, 933–34 (holding the board simply voted on denying the variance request without setting forth findings and the lack of such findings denied the aggrieved party meaningful judicial review), *with City of Rutland v. McDonald's Corp.*, 503 A.2d 1138, 1142 (Vt. 1985) (holding the aggrieved party must timely appeal decisions based on deficient findings).

As to the definition of "filing," I am not inclined to find that a decision buried in the minutes constitutes filing within the meaning of section 414.15. I refer to *Glabach v. Sardelli*, 321 A.2d 1, 5 (Vt. 1974), *overruled by Leo's Motors, Inc. v. Town of Manchester*, 613 A.2d 196, 198 (Vt. 1992), for guidance in determining the meaning of filing.[8]

In *Glabach*, the Vermont Supreme Court addressed the issue of whether the board could render a decision without recording and mailing notice of it. 321 A.2d at 2. The court reasoned, "[T]he starting point of an appeal period is from the date the judgment is recorded." *Id.* at 4. The court observed that the board did not file a copy of its decision with the clerk and the administrative officer of the municipality as required by the applicable statute. *Id.* Moreover, the minutes contained the only record of the decision. *Id.* The court therefore concluded there was no recording of the decision, the date from which the thirty-day appeal period would begin to run. *Id.* Notably, the court stated, "If a board . . . could make a decision affecting the rights of an appellant, bury it in the minutes of a meeting, and neglect to comply with the notification requisites of the statute," the appellant would have no knowledge of the decision and the appeal period would lapse. *Id.* at 5.

---

[8]The Vermont Supreme Court in *Leo's Motors, Inc.* overturned *Glabach* because the concern in *Glabach*—that appeal rights could be lost if the board neglected to comply with the notification requirements of the relevant statute and decided to bury the decision in the minutes—was allayed by *Nash v. Warren Zoning Board of Adjustment*, 569 A.2d 447, 451 n.5 (Vt. 1989), in which the court held the appeal period does not commence when the board takes its vote. *Leo's Motors, Inc.*, 613 A.2d at 198. Additionally, the court noted that in *Hinsdale v. Village of Essex Junction*, 572 A.2d 925, 929 (Vt. 1990), it narrowed *Glabach* to hold

> that a . . . decision can be considered rendered before notice is mailed to the applicant if the board has made a decision and given the parties actual notice of its action before the expiration of the forty-five day period, regardless of when the decision is reduced to writing.

*Leo's Motors, Inc.*, 613 A.2d at 198 (quoting *Hinsdale*, 572 A.2d at 929).

Here, Iowa Code section 414.15 provides "within thirty days after the filing of the decision in the office of the board." This section requires filing in the office of the board such that the aggrieved party seeking judicial review has notice of the decision. I do not think a decision buried in the minutes gives sufficient notice to the involved parties. Such a decision requires a fishing expedition on the part of the aggrieved party and reviewing courts. It also promotes laxity and inattentiveness on the part of the Board in regards to setting forth a clear decision delineating its findings in a documentary form apart from the minutes. *See Topanga*, 522 P.2d at 18 ("[T]he intended effect [to require findings] is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions."). Accordingly, I would find that "filing" means that the Board must memorialize its decision in a documentary form simply containing the substance of the decision. The minutes are not the proper vehicle to house the decision.

Based on the foregoing, I would find the Board must file written findings of fact, reasons, legal principles, and conclusions before the thirty-day period in section 414.15 commences to run.[9] I acknowledge, however, that the statute is plausibly subject to other interpretations. The legislature, of course, may resolve any ambiguities in the statute through legislative action.

Wiggins, J., joins this concurrence in part and dissent in part.

---

[9]I do not comment whether the minutes from the December 8, 2016 meeting is sufficient to enable the plaintiffs to specify the grounds of the alleged illegality.