**BUILD–A–RAMA, INC., and Donald R. Tietz, Appellants,**

v.

**Ronald PECK, Appellee.**

**No. 90–299.**

Court of Appeals of Iowa.

June 25, 1991.

**226**

Daniel J. Hanson of Grefe & Sidney, Des Moines, for appellants.

Gordon L. Winkel of Winkel & Winkel, Algona, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

1. Tietz purchased this land in 1975. At that time it was within the county. At his request it was annexed to the City of Algona in 1980. The

HABHAB, Judge.

This cause was tried to the court in August 1989. At the time the plaintiffs placed this matter in suit, it was alleged (1) the defendant had consistently violated a special use variance permit and accordingly asked that an injunction issue and (2) the plaintiffs asked for damages against the defendant alleging in substance that defendant's auction business was a nuisance. Later by amendment, the plaintiffs requested that the court declare void a special use variance permit issued by the Kossuth County Board of Adjustment alleging the board lacked subject matter jurisdiction to issue the permit. The trial court granted injunctive relief, but otherwise ruled adversely to the plaintiffs. The plaintiffs appeal. We affirm.

## I. *Background*

We note at the inception that in the caption of this case two parties are named as plaintiffs. It appears from the record that after this cause was placed in suit, the plaintiff Donald R. Tietz acquired title to the property owned and developed by the corporate plaintiff. The parties agreed the corporate plaintiff is wholly owned by Mr. Tietz. There is no challenge as to the real party in interest. For convenience, we will refer to the corporate and individual plaintiff as the plaintiffs.

The plaintiffs are developers of residential subdivisions. They developed the area known as Riverview Third Addition to the City of Algona.[1] The land is zoned for single-family residences. Mr. Tietz resides in a home in this subdivision.

Riverview Third Addition is fronted on the east side by South Hall Street, a well-traveled street leading directly from the Algona business district to Hall State Park, a residential development, and on into the county. Butting South Hall Street on the east immediately across from plaintiffs' property and outside the city limits of Algona is the defendant Ronald Peck's property.

land is low-lying and down wind from the sewer treatment plant. Basements cannot be dug on many of the lots.

Peck's property consists of a former farm operation. Some of the farm buildings, such as silos, remain, but the farming operation (at least as far as livestock-raising is concerned) has been curtailed. The defendant has owned the farm since 1960. Since then and for some time prior thereto, the defendant has conducted a consignment auction business on the premises.[2]

Kossuth County, in 1973, enacted a county zoning ordinance. The defendant's land was zoned R–5 (rural 1– and 2–family district). He claims he was unaware of the rezoning. It is without dispute the defendant's land was being used in a manner inconsistent with the permissive uses under an R–5 district. However, the ordinance typically provides for nonconforming uses and establishes a board of adjustment which is empowered to grant variances.

Defendant applied to that board for a variance in accordance with provisions of the ordinance. At a meeting held January 10, 1983, the board of adjustment met and, after discussion, passed the following resolution:

> That Ronald Peck be granted a special use variance to hold a maximum of four auctions per month in the building that he has presently constructed. It is understood that the auctions be of the same general nature and type as presently being held and that livestock auctions are not permitted. It is also stipulated that the area be kept neat and clean and that the sale items not be stored outside after the sale and that they be removed within a reasonable time after the sale. It is also understood that the primary usage of the land remains R–5 as originally zoned.

The parties do not challenge the procedural requirements preceding the meeting of the board of adjustment. We will presume that all requisite notices were given and the meeting was duly authorized by the zoning ordinance. We note here the January 10, 1983, decision of the board of adjustment was not appealed. But now, some three and one-half years later,[3] the plaintiffs challenge the action of the board, asserting the permit should be declared void on the ground the board of adjustment was without subject matter jurisdiction to issue the permit.

## II. *Subject Matter Jurisdiction*

The plaintiffs, under this heading, allege the permit issued by the board of adjustment on January 10, 1983, is void for lack of subject matter jurisdiction. In raising this issue, the plaintiffs argue the variance granted to the defendant by the board of adjustment constituted rezoning rather than a variance and, consequently, was outside the scope of the subject matter jurisdiction of the board. Although the plaintiffs did not appeal the board's action, they claim even though this is a collateral attack upon such action, subject matter jurisdiction can be raised at any time.

The trial court held, and we agree, the jurisdiction of the zoning tribunal may be attacked at any time. We also agree any action taken by the tribunal without jurisdiction is void. *Bowen v. Story County Board of Supervisors*, 209 N.W.2d 569, 571 (Iowa 1973).

The question here is not whether the plaintiffs can collaterally attack the decision of the board of adjustment on the grounds of lack of subject matter jurisdiction for the trial court held they could. The question is whether the board of adjustment had subject matter jurisdiction to issue the permit. As stated, plaintiffs claim it did not, thus they claim the variance permit is void. We hold, however, under the facts of this case, the board did have subject matter jurisdiction.

Boards of adjustment, under Iowa Code section 358A.15, have the power to grant both special exceptions to zoning ordinances and variances to zoning ordinances. Section 358A.15 provides:

---

2. We note that after rezoning Peck was issued building permits. That action is questionable in view of the R–5 zoning. However, the legality of the issuance of those permits was not challenged, and that issue is not before us.

3. The plaintiff's petition was filed August 21, 1986.

The board of adjustment shall have the following powers:

1. To hear and decide appeals where it is alleged there is error in an order, requirement, decision or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

2. To hear and decide special exceptions to the terms of the ordinance on which such board is required to pass under such ordinance.

3. To authorize on appeal, in specific cases, such variance of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, so that the spirit of the ordinance shall be observed and substantial justice done.

■ Under section 358A.15, boards of adjustment have the power to hear and decide special exceptions to terms of ordinances. And, in specific cases, under defined circumstances, may grant variances. Here, the board granted what it termed a "special use variance."

■ A clear distinction has been drawn between what constitutes a special exception as opposed to a variance. Before drawing this distinction, we note that as used in our statute, "special use" carries the same meaning as "special exception." *Buchholz v. Bremer County*, 199 N.W.2d 73, 75 (Iowa 1972).

The supreme court, in *Cyclone Sand & Gravel v. Zoning Bd. of Adj.*, 351 N.W.2d 778 (Iowa 1984), stated:

A special use permit allows property to be used in a manner that is conditionally allowed by the ordinance. Thus, it differs from a variance provision which allows property to be used in a manner expressly prohibited by a zoning ordinance. Although certain uses are allowed, the granting of a permit is conditioned upon an applicant satisfying certain standards. The obvious purpose of this kind of ordinance is to set up a flexible procedure to regulate certain uses of property which, based on the individual fact situation, may or may not be in accord with the general purpose and intent of the municipality's land policy and the surrounding environment. As the arbiter and dispenser of these permits, the Zoning Board serves in an ancillary role of implementing the city's land use policy and allocating land use to accomplish changes without intervention of a formal amendment of a zoning ordinance. *See City of Des Moines v. Lohner*, 168 N.W.2d 779, 784 (Iowa 1969), citing McQuillin, *Municipal Corporations*, Zoning § 25.160 (3d Ed.1976).

■ The board of adjustment granted what is termed a "special use variance." This perhaps is a misnomer of what was actually granted. From our review of the minutes of the meeting, we conclude the board granted Peck a "variance," not a special use permit. The plaintiffs appear to concede this. In either event, the permit granted to Peck is more clearly akin to the definition of "variance" as set forth in *Buchholz v. Bremer County*, 199 N.W.2d 73, 75 (Iowa 1972). "A variance authorizes a party upon a showing of hardship to use his property in a manner forbidden by the zoning ordinance." *Id.* at 75.

The plaintiffs claim the permit issued to Peck by the board constitutes a rezoning. It argues further the power to zone and rezone property in a county rests with the county board of supervisors and not with the board of adjustment. *See* Iowa Code § 358A.3 (1989).

We agree the board of adjustment does not have the power to zone or rezone. Nor can the board of adjustment amend or set aside a zoning ordinance under the guise of a variance. *Deardorf v. Board of Adjustment*, 254 Iowa 380, 389, 118 N.W.2d 78, 83 (1962), quoted with approval in *Board of Adjustment v. Ruble*, 193 N.W.2d 497, 503 (Iowa 1972). The supreme court in *Deardorf* said:

"It is fundamental that the board may not legislate. It exercises only administrative and quasi judicial power strictly within the limitations of section 414.12, 3.

* * * The board cannot amend or set aside the zoning ordinance under the guise of a variance. * * * [citing authorities].

　*　　*　　*　　*　　*　　*

"It is well recognized that the power to grant a variance should be exercised sparingly and with great caution or in exceptional instances only. * * * [citing authorities]." *Deardorf v. Board of Adjustment, etc.,* 254 Iowa at 389–390, 118 N.W.2d at 83.

*Board of Adjustment of City of Des Moines v. Ruble,* 193 N.W.2d at 503.

We, however, disagree the permit granted to Peck, by the board, rises to the level of rezoning. There is nothing in the board proceedings that suggests the board intended that result. Factually, a reading of the resolution reveals otherwise.

We conclude the board of adjustment did have subject matter jurisdiction to hear the request of Peck at its January 10, 1983, meeting. Section 358A.15 and the corresponding sections in the county ordinance vests the board with this authority.

■ We do not necessarily disagree with the plaintiffs that hardship is the essence of variance. *Greenawalt v. Zoning Board of Adjustment,* 345 N.W.2d 537, 541 (Iowa 1984). In this respect, hardship is never presumed, but must be proven by the one seeking the variance. *Id.* at 542.

■ The plaintiffs complain hardship was not proven at the January 10, 1983, hearing. However, the plaintiffs now attack the merits of that hearing and the judgment of the board. Although we recognize subject matter jurisdiction can be attacked at any time, it is also the law of this state that judgments of a tribunal cannot be collaterally attacked. *Callenius v. Blair,* 309 N.W.2d 415, 418 (Iowa 1981). The time to question the decision of the board and its failure to make adequate findings was by way of appeal in the manner prescribed by statute. We, like the trial court, decline to question the wisdom of the board's action in these proceedings. We affirm the trial court on this issue.

### III. *Nuisance*

■ The plaintiffs challenge the trial court's ruling that Peck's operation of an auction business was not a nuisance. It is for the plaintiffs to carry the burden of proof to establish their claim. The trial judge, who had the opportunity to test the credibility of the witnesses, concluded the plaintiffs had failed to carry their burden.

Our supreme court, in *Patz v. Farmegg Products, Inc.,* 196 N.W.2d 557 (Iowa 1972), quoted with approval the following from *Bates v. Quality Ready–Mix Co.,* 261 Iowa 696, 702, 154 N.W.2d 852, 857 (1967):

"A fair test of whether the operation of a lawful trade or industry constitutes a nuisance has been said to be the reasonableness of conducting it in the manner, at the place and under the circumstances in question. [Citations.] Thus the question whether a nuisance has been created and maintained is ordinarily one of fact, and not of law, depending on all the attending or surrounding circumstances. Each case of this nature must depend on its own facts." [Citations.]

The supreme court, in *Patz,* 196 N.W.2d at 561, stated:

In determining whether a nuisance has been created we consider priority of location, the nature of the neighborhood, and of the wrong complained of.

When we apply the facts of this case to the applicable Iowa statute and the principles of law set forth above, we agree with the trial court the plaintiffs have failed to establish proof of a nuisance.

### IV. *Damages*

■ We also agree with the trial court that the plaintiffs have failed to prove damages. The plaintiffs' main argument focuses on the fact that they have been unable to sell building lots. There is substantial evidence in the record that home building during the time frame involved in this dispute had virtually come to a halt in Algona, Iowa. In the last four and one-half years, only eight new houses were constructed in Algona, i.e., three in 1989, one in 1988, two in 1987, none in 1986, and two in 1985.

■■■■■■■■■■■■■■■■■■■■■■■

In addition to the adverse economic climate, there is also evidence of other circumstances that impacted on the sale of lots, including offensive odors from the sewage plant and the fact the addition has a number of lots where basements cannot be built.

We affirm on this issue.

### V. *Injunction*

■■■ We agree with the plaintiff that the defendant has conducted activities on his premises which are in violation of the terms of the variance granted. The trial judge, at Peck's suggestion, ordered the issuance of a writ of injunction.

At trial time Peck was selling cars on the premises. In addition, he sold firearms, even though he had on a date previous plead guilty to a felony of selling old bridge planks to a local farmer. He also made his parking lot available for Kossuth County Fair parking and various charitable and fund-raising events.

Tietz complained that Peck's activities caused needless congestion and were in violation of the variance. We agree the trial court properly enjoined those activities that violated the terms of the variance. We affirm on this issue.

### VI.

We have considered all issues raised by the plaintiffs, whether mentioned or not. For those we did not elaborate on, we find them to be either without merit or to have no relevancy to the assignments of error before us.

We affirm in all respects. Costs are to be assessed to appellant.

AFFIRMED.