MANSFIELD, Justice.
This case requires us to interpret Iowa Code section 414.15, which requires a petition for writ of certiorari seeking review of a decision of a city zoning board of adjustment to be filed in district court "within thirty days after the filing of the decision in the office of the board."
*476 Iowa Code § 414.15 (2015). We conclude that the thirty-day period is triggered when the board posts the decision on its public website. However, what is posted must be an actual decision . Proposed minutes that have not yet been approved do not constitute a decision. Our conclusion is supported by out-of-state appellate decisions where the same statutory terms were applied. For these reasons, we affirm the judgment of the district court in part, reverse it in part, and remand for further proceedings.
I. Facts and Proceedings.
To operate a daycare facility in Davenport, one must obtain a special use permit from the Davenport Zoning Board of Adjustment. In March 2014, the Board of Adjustment granted Tiny Tots Learning Center (Tiny Tots) a permit to operate at 1112 Bridge Avenue. Tiny Tots had leased the premises from the landowner. Tiny Tots, however, closed its doors in December 2014. The property stood vacant from December 2014 to July 2016.
In July 2016, Mz. Annie-Ru Daycare Center (Annie-Ru), a new lessee of the premises, opened a daycare at the same location. Annie-Ru supervises more children and is open for longer hours than Tiny Tots.[1] The Davenport Zoning Administrator nonetheless determined the special use permit issued to Tiny Tots "run[s] with the land." Therefore, Annie-Ru was allowed to operate without having to apply for and obtain a new special use permit.
The following month, a nearby resident named Kenneth Burroughs and several other residents wrote the zoning administrator, challenging Annie-Ru's right to operate. In response, the zoning administrator reiterated his view that the special use permit ran with the land, that it was still valid, and that Annie-Ru's operations complied with that special use permit. He also advised the complaining residents they could appeal his decision to the Board of Adjustment. Burroughs and the others did so on September 7.
The residents' appeal came on for a public hearing before the Board of Adjustment on October 13. Burroughs and others who appeared argued that Tiny Tots' special use permit was not transferable to Annie-Ru. City staff disagreed. At the conclusion of the hearing, the Board of Adjustment voted 4-0 to uphold the City staff's recommendation. After the vote, the chairperson of the Board of Adjustment advised the complaining residents they could file a petition to revoke Annie-Ru's special use permit.
The minutes of the Board of Adjustment's October 13 meeting describe the appeal and then state as follows:
Flynn presented the staff report. Staff position is that a Special Use Permit runs with the land and not with the applicant.
Staff stated that notices were sent to 8 property owners within 200 feet of the subject property. Staff received 0 letters in opposition to the request.
Recommendation and Findings of Fact
City Staff stands by its interpretation that Mz. Annie-Ru Daycare Center LLC is legally entitled to operate under the provisions of the Special Use Permit issued to Tiny Tots Daycare and requests the Zoning Board of Adjustment uphold its decision.
The petitioner [ (Burroughs) ] addressed the Board and reiterated the request, claiming that Special Use Permits do not run with the land.
*477 Numerous persons spoke in favor of the appeal (please see the video for name and addresses).
Two persons spoke against the appeal and in favor of staff's interpretation of the code.
One was the representative of the owner of 1112 Bridge Avenue and the other was City staff attorney Chris Jackson.
Attorney Chris Jackson quoted three separate zoning authorities on the topic which all confirmed that Special Use Permits do run with the land (and not the applicant).
Motion:
Reistroffer moved to uphold staff[']s recommendation. Woodard seconded the motion and it carried (4-0) on a roll call vote.
Strayhall, yes; Reistroffer, yes; Woodard, yes; and Hart, yes.
These minutes were posted on the City's website and available for public inspection in advance of the next meeting on October 27. However, when posted they had not been actually approved. Approval did not occur until the October 27 meeting.
On November 14, Burroughs and other nearby residents filed a petition to revoke Annie-Ru's special use permit.[2] The petition came on for a public hearing at the Board of Adjustment's December 8 meeting. Following discussion of various issues, the Board of Adjustment unanimously voted against revoking the special use permit.
The minutes of the Board of Adjustment's December 8 meeting summarize the petition to revoke and then contain the following information:
Staff stated that notices were sent to adjacent owners within 200 feet of the subject property. Staff received 3 emails in support of the request.
Recommendation and Findings of Fact
FINDINGS
1. The location, design, construction and operation of the day care center adequately safeguard[ ] the health, safety, and general welfare of persons residing or working in adjoining or surrounding property.
2. The day care center does not impair an adequate supply of light and air to surrounding property.
3. The day care center does not unduly increase congestion in the streets, or public danger of fire and safety.
4. The day care center does not diminish or impair established property values in adjoining or surrounding property.
5. The day care center is in accord with the intent, purpose and spirit of the Zoning Ordinance and Davenport 2025: Comprehensive Plan for the City.
RECOMMENDATION
The Special Use Permit [ (SUP) ] is in compliance with the 'Criteria for Granting a Special Use Permit' and the conditions placed on the Permit at the time of granting. Based on this compliance and the Findings above, staff recommends that the revocation be denied.
The petitioner addressed the Board and reiterated the request.
Multiple persons spoke in favor of the request. Multiple persons spoke against the request, including the property owner and the daycare operator.
The Board discussed the request and the issues surrounding the neighborhood.
*478 There are two SUPs in the neighborhood, one at 1112 Bridge and the other at 1118 Bridge. The Board found that the issues have to do with enforcement of on-street parking regulations.
Motion:
Hart stated that the Board has the authority to impose conditions on SUP14-02, but that could be a separate matter from the revocation.
Reistroffer moved to revoke SUP14-02. Woodard seconded the motion and it failed (0-4) on a roll call vote.
Strahall, no; Reistroffer, no; Woodard, no; and Hart, no.
The December 8 meeting minutes were posted on the City's website and available for public viewing on December 19. However, when posted they had not yet been approved. Indeed, the agenda for the December 22 meeting included "[c]onsideration of the minutes from the December 8, 2016 public hearing" as one of the agenda items. Thus, approval of the December 8 minutes did not occur until the next Board meeting, on December 22. The minutes for the December 22 meeting reflect that this was the first action at that meeting and happened unanimously by voice vote. These minutes were not posted to the City's website until January 6, 2017.
On January 25, Burroughs and five other nearby residents filed a petition for writ of certiorari in the Iowa District Court for Scott County challenging the Board of Adjustment's October 13, 2016 and December 8, 2016 decisions. The City and the Board of Adjustment (hereafter collectively "the City") and Annie-Ru were named as defendants. On February 3, 2017, the City filed a motion to dismiss, asserting the petition for certiorari was untimely because it was not filed within thirty days of the challenged decisions.
The plaintiffs resisted the motion. They argued that a signed written decision with factual findings was necessary to trigger the thirty-day deadline for seeking certiorari review. Alternatively, they argued that even if minutes of the Board's meetings could be sufficient in some circumstances to start the thirty-day time period, the December 8 minutes were not properly filed at that time and did not become properly filed until early January 2017, within the thirty-day deadline. The plaintiffs also supplemented their resistance with an affidavit from an individual who had visited the Davenport Planning Department on February 13 and asked to see "the official Board [of Adjustment] file on the Board's actions pertaining to real property located at 1112 Bridge Avenue ...." In response, the City had emailed a file that, according to the affiant, contained neither a written decision nor minutes relating to the October 13, 2016 and the December 8, 2016 decisions.
Following a hearing, the district court granted the City's motion on April 13. The court concluded that the "thirty day time period begins to run from the time the appealing party has either actual knowledge or is chargeable with knowledge of the decision to be appealed." Because it was "undisputed" that plaintiffs attended both the October 13 and the December 8 meetings, they had actual knowledge of the Board's decisions as of those dates: "[T]he Court cannot hold that they did not have actual knowledge or chargeable knowledge of the decision which they witnessed firsthand ...."
The plaintiffs appealed, and we retained the appeal.
II. Standard of Review.
Our review of a certiorari action is for correction of errors at law.
*479 Chrischilles v. Arnolds Park Zoning Bd. of Adjustment , 505 N.W.2d 491, 493 (Iowa 1993). Furthermore, our review of a district court's ruling on a motion to dismiss is also for correction of errors at law. Geisler v. City Council of Cedar Falls , 769 N.W.2d 162, 165 (Iowa 2009) (reviewing a district court's grant of a motion to dismiss a petition for writ of certiorari for lack of subject matter jurisdiction).
III. Analysis.
In this appeal, each side has an initial and a fallback position. The City's first line of argument is that a party's actual or constructive knowledge of a Board decision starts the thirty-day clock running, regardless of whether that decision has been filed (and regardless of whether that decision has even been reduced to writing). The plaintiffs' first line of argument is that a decision cannot start the appeal clock until it not only has been reduced to writing and properly filed, but also has been signed and contains sufficient findings of fact . In the event that our court accepts neither of these front-line arguments, the parties engage in a second-tier debate on what it means for a decision to be filed "in the office of the board."
A. Does Actual or Constructive Knowledge of a Board Decision Start the Appellate Clock Running? Iowa Code section 414.15 provides that a petition for certiorari seeking review of a board of adjustment decision "shall be presented to the court within thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15. On the other hand, the general certiorari rule, Iowa Rule of Civil Procedure 1.1402(3), states, "The petition must be filed within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1402(3). Additionally, in Chrischilles , we said,
If the Chrischilles had a quarrel with the legality of the variance, they were obligated under section 414.15 to challenge it within thirty days. See Arkae Dev., Inc. v. Zoning Bd. , 312 N.W.2d 574, 577 (Iowa 1981) (time for taking an appeal under chapter 414 runs from time appealing party chargeable with knowledge of decision to be appealed).
505 N.W.2d at 494.
Relying on the text of rule 1.1402(3) and the foregoing excerpt from Chrischilles , the City maintains that a party's deadline for seeking certiorari review of a board of adjustment decision starts to run as soon as the party has actual or constructive knowledge of the decision, even if the decision is merely made orally at a meeting and not reduced to writing.
We are not persuaded. Iowa Code section 414.15 governs certiorari actions seeking review of board of adjustment decisions. It clearly provides a deadline of "thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15. In the event of conflict, this specific statute should prevail over the more general certiorari rule. See id. § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."); see also Iowa R. Civ. P. 1.101 ("The rules in this chapter shall govern the practice and procedure in all courts of the state, except where ... statutes not affected hereby provide different procedure in particular courts or cases."); In re Marriage of Thatcher , 864 N.W.2d 533, 540 (Iowa 2015) (applying rule 1.101 to give effect to a more specific statute); Wade Farms, Inc. v. City of Weldon , 419 N.W.2d 718, 723 (Iowa 1988) ("[T]he rules of civil procedure do not apply in those cases in *480 which statutes provide a different procedure.").
Chrischilles , in our view, does not countermand the clear text of Iowa Code section 414.15. In that case, the issue was whether the Chrischilles could challenge a decision to issue a zoning variance that had occurred fifteen months before the Chrischilles went to court. See 505 N.W.2d at 493. We said no, because the Chrischilles were "obligated under section 414.15 to challenge [the variance] within thirty days." Id . at 494. There was no suggestion in Chrischilles that the variance decision had not been filed in the office of the board of adjustment around the time it was made. See id. ; see also Iowa Code § 414.15. So Chrischilles does not address the question before us today.
Chrischilles does include a parenthetical blurb on Arkae Development that the "time for taking an appeal under chapter 414 runs from [the] time [the] appealing party [was] chargeable with knowledge of [the] decision to be appealed." See Chrischilles , 505 N.W.2d at 494 (citing Arkae Dev. , 312 N.W.2d at 577 ). But this parenthetical is too broad for what Arkae Development actually held. Arkae Development involved an appeal from a city official to a zoning board of adjustment, not from a board of adjustment to a court. 312 N.W.2d at 575, 577. In that event the relevant statute is not Iowa Code section 414.15, but section 414.10, which provides that appeals to boards of adjustment "shall be taken within a reasonable time as provided by the rules of the board." See id. at 576 (quoting Iowa Code § 414.10 ). The board in Arkae Development had adopted a rule that appeals "must be perfected to the Board not later than thirty (30) days after the decision complained of." Id . at 575. We construed this rule as having "an implied provision that the thirty-day period runs from the date that the person appealing had actual knowledge or was chargeable with knowledge of the decision appealed from and of the facts forming the basis of his objection." Id. at 577. So Arkae Development is not on point, either.[3]
In sum, we believe the plain language of Iowa Code section 414.15 controls here, not the text of rule 1.1402(3) or our prior decisions in Chrischilles and Arkae . An aggrieved party has "thirty days after the filing of the decision in the office of the board." Iowa Code § 414.15.
B. Must a Decision Be Signed and Contain Sufficient Findings of Fact to Start the Appellate Clock Running? Having decided that the City's front-line position is incorrect, we will now turn to the plaintiffs' front-line position. They argue that a decision must meet certain formalities, including factual findings, in order to start the appeal deadline running under Iowa Code section 414.15.
The plaintiffs call our attention to Citizens Against Lewis & Clark (Mowery) Landfill v. Pottawattamie County Board of Adjustment , 277 N.W.2d 921 (Iowa 1979). That case involved a grant of a conditional use permit by the Pottawattamie County Board of Adjustment for the *481 operation of a sanitary landfill. Id . at 922. We set aside the board's decision, finding that the county board's failure to adopt procedural rules as required by Iowa Code section 358A.12 -now section 335.12[4] -necessitated a new hearing. Id . at 923-24. We went on to discuss the separate issue of findings of fact:
In view of this finding, it is unnecessary to rule on the specific objections raised by plaintiffs concerning the manner in which this hearing was conducted. However, we believe the question concerning the board's duty to make written findings merits discussion. There is no statutory requirement that the board do so. However, there is no doubt such findings would be of great benefit, both to the trial court and to this court on certiorari or appeal from the board's decisions. They would provide a ready basis for determining the reasons for the board's action and would help immeasurably in determining whether the result was reasonable or was, as is frequently claimed, arbitrary and capricious. It would also serve the additional purpose of sharpening the issues the parties should raise on appeal.
....
These are compelling considerations which have persuaded us to adopt the rule that boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding. Such findings must be sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted. This rule shall apply to board of adjustment proceedings after the date this opinion is filed.
Id . at 925 (citations omitted).
The City responds that the written findings requirement announced in Citizens was qualified somewhat in a subsequent city zoning case. See Bontrager Auto Serv. v. Iowa City Bd. of Adjustment , 748 N.W.2d 483, 489-90 (Iowa 2008). Bontrager Auto Service indicated that "substantial compliance" was sufficient and that the lack of written findings on one of the relevant issues was "not a fatal flaw." Id .
The plaintiffs add that the requirement for written findings not only comes from our caselaw but also is part of the Davenport Municipal Code. In particular, Davenport Municipal Code section 17.52.020(B) requires,
The board shall keep minutes of its proceedings showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall also keep records of its hearing and other official actions. Findings of facts shall be included in the minutes of each case of requested variation and the reasons for recommending or denying such variation shall be specified. Every rule or regulation, every amendment or repeal thereof, and every order, requirement, decision or determination of the board shall be filed immediately in the office of the board and shall be a public record.
Davenport, Iowa, Municipal Code § 17.52.020(B). The City responds that the minutes of the Board of Adjustment complied with section 17.52.020(B).
More tellingly, the City responds that the timeliness of a certiorari petition is a *482 matter expressly governed by Iowa Code section 414.15 and is a separate question from the completeness of the decision being reviewed. That is, once a party seeking judicial review files a timely petition, the party can raise deficiencies in the underlying decision, including the absence of sufficient findings. But a timely petition comes first.
We agree with the City. A timely appeal is necessary to confer jurisdiction on the district court. See City of Des Moines v. City Dev. Bd. , 633 N.W.2d 305, 309 (Iowa 2001) ("A timely petition for judicial review from an administrative decision is a jurisdictional prerequisite."); Wegman v. City of Iowa City , 279 N.W.2d 261, 263-64 (Iowa 1979) (finding the district court lacked jurisdiction over an untimely assessment appeal). Here the statute allows thirty days to appeal from "the filing of the decision in the office of the board." Iowa Code § 414.15. It does not require that the decision be in any particular form or format, so long as it has been "fil[ed] ... in the office of the board." Id . ; see also Build-A-Rama v. Peck , 475 N.W.2d 225, 229 (Iowa Ct. App. 1991) (stating in a county zoning case that "[t]he time to question the decision of the board and its failure to make adequate findings was by way of appeal in the manner prescribed by statute").
By way of analogy, in Bauman v. Maple Valley Community School District , we held that a petition seeking judicial review of the outcome of an election contest was untimely. 649 N.W.2d 9, 16 (Iowa 2002). There the statute provided, "The party against whom judgment is rendered may appeal within twenty days to the district court ...." Id. at 12 (quoting Iowa Code § 62.20 (2001) ) (emphasis omitted). Applying that statute as it was written, we held that the judgment had been "rendered" when it was orally and publicly announced by the contest court on February 21, not when the ensuing written judgment had been signed by all three contest judges on February 25. Id. at 12, 16. We noted that "[r]endition of judgment and entry of judgment are two distinct acts." Id . at 14. Iowa Code section 414.15 is worded differently from section 62.20, but the point remains that we look to the actual text of the provision governing judicial review to determine whether an appeal has been filed in a timely manner so as to confer jurisdiction.
Other courts agree that the time for appeal from a zoning decision runs from the date of the decision, regardless of the alleged adequacy of any findings of fact. See Hoagland v. Town of Clear Lake Bd. of Zoning Appeals , 871 N.E.2d 376, 383 (Ind. Ct. App. 2007) ; Build-A-Rama , 475 N.W.2d at 229 ; Woodward v. Town of Newfield , 634 A.2d 1315, 1317 (Me. 1993) ; 92 MM Motel, Inc. v. Zoning Bd. of Appeals , 90 A.D.3d 663, 664, 933 N.Y.S.2d 881 (2011) ; Thorn v. City of Chester , 49 Pa. D. & C.2d 312, 315-17 (Pa. C.P. Delaware Cty. 1970). Notably, the Thorn court held that a decision without findings "d[id] not preclude or prevent an appeal, or extend any of the time limitations of the act," even though Pennsylvania law expressly required each decision to be accompanied by findings of fact. Thorn , 49 Pa. D & C.2d at 314, 317.[5]
*483 There are sound policy reasons for this approach. The deadline to petition the district court for a writ of certiorari ought to be as clear as possible. Plaintiffs, however, would subject the determination of that deadline to the unpredictable outcome of a debate over the sufficiency of factual findings.
Significantly, our certiorari rule requires the petition to be filed "within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1402(3). Plaintiffs' interpretation of "decision" as including only those decisions supported by sufficient findings of fact would create a stark conflict between Iowa Code section 414.15 and Iowa Rule of Civil Procedure 1.1402(3), a circumstance we normally try to avoid.
C. When Is a Decision "Fil[ed] ... in the Office of the Board"? We now turn to what we believe to be the dispositive issue in this appeal-when is a decision actually "fil[ed] ... in the office of the board"? Iowa Code § 414.15.
First, we believe that to be filed , a decision cannot be simply oral. It must exist in some documentary form. To file something is "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record" or "[t]o record or deposit something in an organized retention system or container for preservation and future reference." File , Black's Law Dictionary (10th ed. 2014). Official minutes can, of course, be used to memorialize a decision. Indeed, the Davenport Municipal Code appears to contemplate that procedure. See Davenport, Iowa, Municipal Code § 17.52.020(B). But there must be some type of document that is filed.
Second, the decision can be filed in electronic rather than paper form. The general assembly has adopted the Uniform Electronic Transactions Act. See Iowa Code ch. 554D. Its purpose is "[t]o facilitate electronic transactions consistent with other applicable law." Id . § 554D.107(1). It provides that "[a] record ... shall not be denied legal effect or enforceability solely because it is in electronic form." Id . § 554D.108(1). The term "transaction" includes "an action or set of actions occurring between two or more persons relating to the conduct of ... governmental affairs." Id . § 554D.103(16). "Person" is broadly defined to mean, among other things, an individual or governmental agency. Id . § 554D.103(12). Furthermore, Iowa Code section 554D.120 empowers-indeed requires-
a governmental agency of this state other than a state executive branch agency, department, board, commission, authority, or institution, [to] determine whether, and the extent to which, [it] ... will create, generate, communicate, store, process, use, and rely upon electronic records.
Id . § 554D.120(1).
In State v. Fischer , we held that even though the implied-consent law required a "written request" to the driver, this could be met by showing the driver a computer screen. See 785 N.W.2d 697, 704-06 (Iowa 2010). We relied on the Uniform Electronic Transactions Act as well as the definition of "written" in Iowa Code section 4.1(39), which "include[d] an electronic record as defined in section 554D.103." Id . at 702-03 (quoting Iowa Code § 4.1(39) (2007) ). Here the law does not even require a written decision; it just requires a decision that has been filed in the office of the board. See Iowa Code § 414.15 (2015).
Our own branch uses electronic records, not hardcopy records, to meet a statutory requirement that a specific "record book" be "kept by the [district court] clerk." See *484 Iowa Code § 602.8104(2)(a ). In Judicial Branch v. Iowa District Court , we considered this statute, which says in relevant part,
The following books shall be kept by the clerk:
a. A record book which contains the entries of the proceedings of the court and which has an index referring to each proceeding in each cause under the names of the parties, both plaintiff and defendant, and under the name of each person named in either party.
800 N.W.2d 569, 575 (Iowa 2011) (quoting Iowa Code § 602.8104(2) (Supp. 2009) ), superseded by Iowa Code § 901C.2on other grounds as stated in State v. Doe , 903 N.W.2d 347, 351, 354 (Iowa 2017). We noted that by September 1997 all counties were using electronic records to meet this longstanding requirement to maintain docket books. Id . at 575. This was seven years before the legislature authorized the supreme court to prescribe rules relating to electronic filing. See 2006 Iowa Acts ch. 1174 § 5 (codified at Iowa Code § 602.1614 (2007) ). The computerized version of the docket is the only docket. See Judicial Branch , 800 N.W.2d at 577.
Third, we believe that a document has been filed in the "office of the board" when it has been posted on the board's publicly available website that the board uses as a repository for official documents. In this regard, we are guided by our earlier decision in Holding v. Franklin County Zoning Board of Adjustment , 565 N.W.2d 318 (Iowa 1997). Holding involved the counterpart to Iowa Code section 414.15 for parties bringing court challenges to county zoning actions. See id. at 320 ; see also Iowa Code § 335.18 (2015) (similarly requiring the petition to be presented to the court "within thirty days after the filing of the decision of the board"). There we upheld the trial court's determination that a zoning administrator's private residence could be "the office of the board" in a situation where the board had not designated an official office and official papers were being stored there. See 565 N.W.2d at 320. As we put it, "[N]othing in Code chapter 335 ... requires zoning board records to be kept in a public building." Id .
The lesson we draw from Holding is that the office of the board is not strictly a matter of geography. If a private home can be deemed an office of the board, a public website that is maintained and controlled by the board and used as a clearinghouse for official documents can likewise be deemed an office of the board-even if the server for that website happens to be located outside the board's regular physical offices.
But there are some limits to this principle. Given the circumstances in Holding , we decided that an appeal that had been taken after the board had voted to approve the conditional use permit but before a signed, written decision had been filed should be considered timely. Id . at 321. We emphasized that the county zoning statutes required records of official actions to be "immediately" filed in the office of the board, and where this had not occurred, the plaintiffs could not be faulted for filing their petition for writ of certiorari too soon. Id. (quoting Iowa Code § 335.12 (1995) ).
Notably, the city zoning statutes contain the same immediate filing requirement. They provide in part,
The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which *485 shall be immediately filed in the office of the board and shall be a public record.
Iowa Code § 414.9 (2015).
Also, in Purethane, Inc. v. Iowa State Board of Tax Review , which involved an administrative appeal under Iowa Code section 17A.19, we concluded,
In the absence of a file or entry system by which the public and parties to a controversy before the board of tax review can learn of the board's decision, due process requires the statutory appeal period begins to run when the board decision is officially made available as a public record.
498 N.W.2d 706, 710 (Iowa 1993).
So where does this leave us? We agree with the City that the posting of minutes to the Board's official website setting forth the Board's decision can constitute the "filing of the decision in the office of the board." However, the plaintiffs raise a valid point concerning the status of those minutes. What the Board initially posted on its website following each Board meeting were unapproved, and therefore unofficial, minutes. Those minutes were not approved until the subsequent meeting of the Board and that approval was not shown on the website until sometime thereafter. We believe the City cannot rely on the posting of an item it reserves the right to change, such as unapproved minutes that are subject to revision, as "the filing of the decision." See Iowa Code § 414.15.
A Louisiana decision is on point. See Aucoin v. City of Mandeville , 552 So.2d 714 (La. Ct. App. 1989). While zoning statutes vary from state to state, Louisiana law is the same as Iowa's. It requires the petition to be "presented to the court within thirty days after the filing of the decision in the office of the board." Id . at 716 (quoting La. Rev. Stat. Ann. § 33:4727(E)(1) ). The Louisiana Court of Appeal found that the latest date for challenging a zoning board decision was not thirty days after the meeting where the decision was made, but thirty days after the meeting where the minutes of that meeting were approved. Id . at 717.
Even more on point is a Texas case also decided under essentially the same statutory language. See Sanchez v. Bd. of Adjustment , 387 S.W.3d 745 (Tex. App. 2012). In Sanchez , an administrative assistant created a digital audio recording of an October 5, 2009 meeting. Id . at 749. Sometime thereafter, the assistant transferred the digital recording to a CD. Id. Within a week of October 5, the assistant transcribed minutes using her work laptop and saved the document on her laptop. Id . at 749-50. Finally, on October 19, the board of adjustment approved those October 5 minutes and the assistant posted them on-line so they could be viewed by the public. Id . at 750.
Texas law requires a petition to be filed "within 10 days after the date the decision is filed in the board's office." Id . at 751 (quoting Tex. Local Gov't Code Ann. § 211.011(b) ). In that case, the allegedly untimely petition had been filed on October 28. Id . at 747.
The Texas Court of Appeals first considered what amounts to a "decision." Id . at 751. It held that an electronic recording of the meeting was not a decision. Id. at 751-53. Rather, "the term 'decision' means the board of adjustment's minutes reflecting a vote on a particular question and the records related to that decision." Id . at 753.
Next, the court turned to the question of when the decision had been "filed in the board's office." Id . The court held that unapproved minutes stored on the assistant's work laptop could not be considered filed. Id . Instead, filing occurred when the minutes had been approved and posted on-line on October 19. Id. at 754. Accordingly, *486 a petition filed on October 28 was timely. Id . ; see also Sun Oil Co. v. Bd. of Zoning Appeals , 9 Ohio Misc. 101, 223 N.E.2d 384, 386 (1966) ("The act of filing the minutes incorporating a decision of a Board of Zoning Appeals, following its approval of them, is essential to begin the running of the ... appeal period.").
Here the plaintiffs sought certiorari review of two separate Board actions-(1) its recognition of Annie-Ru's special use permit and (2) its later refusal to revoke that permit. The first action occurred at an October 13, 2016 Board meeting; the second at a December 8, 2016 Board meeting. The plaintiffs did not file suit until January 25, 2017. However, we conclude the challenge to the refusal to revoke the permit is timely because the unapproved minutes of the December 8, 2016 meeting posted to the Board's website on December 19 do not amount to "the filing of the decision." See id . On the other hand, the plaintiffs do not contest that the minutes of the October 13 Board meeting had been posted, that they had been approved, and that the approval had been posted on the Board's website more than thirty days before the plaintiffs went to court. This portion of the plaintiffs' challenge is therefore untimely.[6]
IV. Conclusion.
For the foregoing reasons, we reverse the district court's order to the extent it dismissed the challenge brought by Burroughs and other residents to the Board of Adjustment's refusal to revoke Annie-Ru's special use permit. We affirm that order to the extent it dismissed their challenge to the Board's initial recognition of that special use permit. We remand to the district court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
All justices concur except Appel and Wiggins, JJ., who concur in part and dissent in part, and Hecht and Waterman, JJ., who take no part.

Annie-Ru is open 24/7 and supervises up to 120 children per day.

Under the Davenport Municipal Code, a special use permit may be revoked after a public hearing where a petition of over twenty percent of the property owners located in the 200 feet notification area, stating valid reasons for additional review, is submitted to the board of adjustment. Davenport, Iowa, Municipal Code § 17.48.050 (2016).

Another one of our prior cases that does not speak to the present controversy is City of Johnston v. Christenson , 718 N.W.2d 290 (Iowa 2006). There we quoted Iowa Code section 414.15 and said, "Petitions for writ of certiorari must be filed within thirty days from the time of the board action." Id . at 303 n.5. We found the City's petition timely because it had filed four days after the board issued a revised decision on reconsideration. Id .Christenson thus did not require us to decide whether an appeal would be timely if taken more than thirty days after a party knew of a board decision but less than thirty days after that decision had been "fil[ed] ... in the office of the board." See Iowa Code § 414.15.

Iowa Code chapter 335 relates to county zoning. It contains a number of provisions analogous to those in chapter 414 relating to city zoning. Compare Iowa Code § 335.12 ("Rules"), and id. § 335.18 ("Petition to court"), with id. § 414.9 ("Rules-meetings-general procedure"), and id. § 414.15 ("Petition for certiorari").

In re CAFRA Permit No. 87-0959-5 Issued to Gateway Associates is not to the contrary. See 152 N.J. 287, 704 A.2d 1261 (1997). CAFRA involved review of a state agency, not a zoning matter, and the New Jersey Supreme Court found that the plaintiff had waited too long to appeal the "final agency decision." Id . at 1267-68. The court's analysis turned on finality, not on whether the agency decision had adequate findings or not. Id . The court found that a November 1986 letter was sufficient to trigger the appeal deadline. Id.

We further note that the Board of Adjustment's use of web-posted meeting minutes as its method of filing decisions has had two effects. First, it has meant that filing does not occur "immediately" after the decision is made as required by Iowa Code section 414.9. Second, it has resulted in some uncertainty as to when filing actually occurs, as illustrated by this case. Those parallel the two difficulties noted in Holding , 565 N.W.2d at 321. Accordingly, we believe that as in Holdin g a petition for certiorari filed after the meeting in question and "anytime until thirty days after filing of the board's decision" would be timely. See id . In other words, the window to file closes thirty days after minutes reflecting the decision are filed, the minutes have been approved, and the approval has been posted, but the window opens once the decision has been made.