# IN THE COURT OF APPEALS OF IOWA

No. 23-1538
Filed October 30, 2024

**BONIFACE NGWANGWA,**
aka **BALUME KENNY BUHENDWA,**
        Plaintiff-Appellant,

**vs.**

**TYSON FRESH MEATS, INC., and GARRY SPENCER,**
        Defendants-Appellees.

_____

        Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple,

Judge.

        An employee appeals the district court's grant of summary judgment to the

employer on his national-origin discrimination claim. **REVERSED AND

REMANDED.**

        David Albrecht, Madison Fiedler Carlson, and Ashley Griffin of Fiedler Law

Firm, P.L.C., Johnston, for appellant.

        Kelsey J. Knowles, Michael R. Reck, and Alexandra M. Cutler of Belin

McCormick, PC, Des Moines, for appellees.

        Heard by Tabor, C.J., Ahlers, J., and Telleen, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**TABOR, Chief Judge.**

Twenty-four minutes.  That's how much time elapsed between the deadline set by the Iowa Civil Rights Commission for Boniface Ngwangwa to file his discrimination complaint and when his law firm's email arrived in the commission's inbox.  Finding that Ngwangwa missed the 300-day filing limitation at Iowa Code section 216.15(13) (2020), the commission dismissed his complaint.  On judicial review of the agency action, the district court ruled that work disruptions during the early days of the COVID-19 pandemic supported Ngwangwa's argument that equitable tolling excused the late filing.  That court remanded for the commission to process his complaint.  But in his ensuing civil rights lawsuit, Ngwangwa's employer, Tyson Fresh Meats, Inc., and his boss, Garry Spencer, insisted it was wrong to apply a "times-were-tough exception" to the filing deadline.[1]  A different district court agreed and granted their motion for summary judgment.  Ngwangwa appeals, arguing several grounds for reversal.

Because the commission's rules setting an emailing deadline of 4:30 p.m. improperly trimmed the 300-day window for filing complaints under the Iowa Civil Rights Act (ICRA), we reverse the dismissal and remand for further proceedings.

**I.  Facts and Prior Proceedings**

Fleeing civil war, Ngwangwa moved to the United States from the Democratic Republic of the Congo in 2010.  In 2015, he began working at the Tyson meat plant in Waterloo.  He recalled that his supervisor, Spencer, threatened to fire him in November 2018 after he suffered a back injury on the job.

---

[1] We will use Tyson as a shorthand reference to both defendants.

Then in March 2019, Ngwangwa reported to Spencer that fellow Tyson workers from Africa were doing a good job, despite a broken machine slowing down the production line. Spencer allegedly replied that he did not like Africans. Later, when things were going well at work, Ngwangwa remembered trying to win Spencer over, saying: "You see? I'm doing a good job. This African is doing a good job." But Spencer allegedly said again that he didn't like "Black people from Africa."

Ngwangwa completed the naturalization process to become a United States citizen in 2019 and planned to attend his citizenship ceremony in May.[2] According to his deposition, Ngwangwa cleared his time off with Spencer. But when the date came, Spencer denied his request to leave the plant and reported that Ngwangwa "abandoned" his post. On June 4, Tyson fired Ngwangwa. The next day, Ngwangwa filed a grievance with the company that was never resolved.

Fast forward 300 days to Monday, March 30, 2020—the deadline for filing a complaint of discrimination with the commission under the ICRA. *See* Iowa Code § 216.15(13). Through counsel, Ngwangwa sent his complaint by both email and regular mail. The letter was postmarked March 30. The email arrived at 4:54 p.m. that same day. But the commission notified Ngwangwa's counsel on Thursday, April 2 that it determined both the mailed and emailed complaints were untimely.

Counsel representing Ngwangwa later explained that the COVID-19 pandemic forced his firm's office to close beginning March 13. The attorneys were working remotely, and staff were working sporadically. "In-person meetings with

---

[2] The record shows that after his naturalization ceremony, Ngwangwa legally changed his name to Balume Kenny Buhendwa. But because the parties continue to use his former name, we will do so also.

clients ceased, and obtaining client signatures on civil rights complaints became much more difficult," according to counsel.

Still, the commission stuck by its rules. Those rules required that a complaint "be filed within the 300 days after the occurrence of an alleged unlawful practice or act" to be considered timely. Iowa Admin. Code. R. 161-3.3(1).[3] Mailed complaints were considered filed as of the date of mailing, "except for a complaint of discrimination." Iowa Admin. Code. R. 161-3.5(4)(b). Emailed complaints were considered filed on the date the commission received them, but only if received by the end of "office hours." Iowa Admin. Code. R. 161-3.5(4)(f). "Office hours are 8 a.m. to 4:30 p.m. Monday through Friday." Iowa Admin. Code. R. 161-1.1(1)(b).

Based on the late filing, the commission dismissed Ngwangwa's complaint. When asked in his deposition what delayed him in filing his civil rights complaint, he testified it was "not knowing where . . . to go and where to start."

Ngwangwa sought judicial review in the Polk County district court. In March 2021, Judge David Porter applied equitable tolling, reversed the dismissal, and remanded the case for the commission to process the complaint. Judge Porter wrote that "[n]othing in modern American history has disrupted the 'normal order of the things' quite like COVID-19. Private industry, as well as governmental services have been required to make significant adjustments in order to continue to provide services for clients, or the public [at] large."

---

[3] The commission amended its rules governing the complaint process effective September 25, 2024. *See* https://perma.cc/NW78-DFRB. We address the pre-amendment version in this opinion.

Given those circumstances, the court found that Ngwangwa and his counsel "demonstrated reasonable diligence in enforcing the claim, but could not because of circumstances beyond their control (in whole or in part), [so] equitable tolling is an appropriate remedy." As its bottom line, the court decided that Ngwangwa "should not be punished because his attorney's office took affirmative steps, which were consistent with the public health recommendations at the time, to protect its staff and clients from the dangers of COVID-19." The commission did not appeal Judge Porter's order.

In December 2021, Ngwangwa left the administrative track and sued Tyson in the Black Hawk County district court.[4] The lawsuit alleged discrimination based on national origin.[5] Tyson moved for summary judgment, alleging Ngwangwa's late filing of his civil rights claim with the commission barred his lawsuit. Ngwangwa resisted, noting that the district court had "already [found] his claim was timely."

In September 2023, Judge Joel Dalrymple granted the employer's motion for summary judgment. After reciting the commission's filing deadlines, Judge Dalrymple wrote: "A strict interpretation finds the filing untimely." And he declined to apply equitable tolling to Ngwangwa's situation. The court concluded: "Equitable tolling is a remedy reserved for circumstances that are truly beyond the control of

---

[4] His filing of a timely complaint with the commission was a prerequisite to suing in court. *See* Iowa Code § 216.16(1) (providing that a complainant "must initially seek an administrative relief"). After his complaint was on file for sixty days, unless an administrative judge found no probable cause, he could obtain an administrative release—a so-called "right to sue letter." *Id.* § 216.16(3)(a).

[5] The original petition also raised claims of disability discrimination and retaliation, but Ngwangwa did not object to Tyson's motion to dismiss those claims.

the plaintiff. Plaintiff had nearly the entire 300-day period to file his complaint before COVID-19 impacted the legal system. The undersigned disagrees with the prior finding of reasonable diligence." Ngwangwa appeals the grant of summary judgment.

## II. Scope and Standards of Review

We review the grant of summary judgment for the correction of legal error. *Myers v. City of Cedar Falls*, 8 N.W.3d 171, 176 (Iowa 2024). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Id.* (citation omitted). Here, a motion to dismiss may have been the appropriate vehicle to raise the 300-day filing issue. *See Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566 (Iowa 2018). But the district court relied on the framing of the issues and input from the parties. Plus, the form makes no difference here, because we also review the ruling on a motion to dismiss for correction of errors at law. *Ritz v. Wapello Cnty. Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999).

When examining the scope of the commission's interpretive authority over the ICRA, we apply the standards in Iowa Code section 17A.19(10). *See Banilla Games, Inc. v. Iowa Dep't of Inspections & Appeals*, 919 N.W.2d 6, 12–13 (Iowa 2018) ("Where there is no express grant of interpretive authority, we as a general matter do not grant deference to an agency when the legal terms being construed have independent legal meaning not within the agency's expertise." (cleaned up)).

### III. Analysis

The district court granted summary judgment, finding that Ngwangwa failed to satisfy a prerequisite for bringing his civil rights action—lodging a timely complaint with the commission. At issue are these provisions:

> (1) Any person claiming to be aggrieved by a discriminatory or unfair practice may, in person or by an attorney, make, sign, and file with the agency a verified, written complaint which shall state the name and address of the person, employer, employment agency, or labor organization alleged to have committed the discriminatory or unfair practice of which complained, shall set forth the particulars thereof, and shall contain such other information as may be required by the agency. . . .
>
> . . . .
> (13) . . . [A] claim under this chapter shall not be maintained unless a complaint is filed with the agency within three hundred days after the alleged discriminatory or unfair practice occurred.

Iowa Code §§ 216.15 (1), (13).

Ngwangwa contests the grant of summary judgment in two ways. First, he contends that the Black Hawk County district court lacked authority to reach a different decision on equitable tolling than the Polk County district court did on judicial review of the agency action. But even if the second court had authority, he contends it was wrong in rejecting the equitable tolling argument.[6] Second, Ngwangwa argues that the district court erred in relying on commission rules that violated the ICRA. We focus on his second argument.

---

[6] Ngwangwa also relies on our supreme court's supervisory order tolling "any statute of limitations, statute of repose, or similar deadline" from March 17 to June 1, 2020. Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services*, ¶ 33 (Apr. 2, 2020). But his reliance is misplaced because that order explicitly referred only to "action[s] in district court." *Id.*

Ngwangwa urges that the district court erred in relying on commission rules for filing complaints that violate the ICRA's mandate that it be construed broadly to eliminate employment discrimination. To illustrate, he notes that his complaint was postmarked on March 30, but the commission did not consider it filed until it physically reached the office. *See* Iowa Admin. Code R. 161-3.5(4)(b) (considering documents filed on date of mailing *except* for a complaint of discrimination).[7] And although his emailed complaint arrived at 4:54 p.m. on March 30, the commission did not deem it "filed" until the next day because it was after office hours. *See* Iowa Admin. Code. R. 161-3.5(4)(f).[8] Ngwangwa urges that both rules are invalid—at least as applied to these facts—because they undermine the ICRA protections.

Before reaching the merits of Ngwangwa's argument, we address Tyson's assertion that he did not preserve error. Tyson acknowledges that Ngwangwa challenged the legality of the administrative rules in resisting its summary judgment motion. But the employer notes that the district court "did not mention [those claims], much less rule on them." And Ngwangwa did not seek an expanded ruling under Iowa Rule of Civil Procedure 1.904. Tyson cites *Freedom Financial Bank v. Estate of Boesen* for the proposition that when a district court overlooks an issue, the party who raised it must request a ruling to preserve error for appeal. 805 N.W.2d 802, 809 (Iowa 2011).

In reply, Ngwangwa contends "it is plain the district court rejected [his] arguments" by choosing a "strict interpretation" of the 300-day filing deadline. He

---

[7] Under the commission's new rules: "Any document received by U.S. mail will be filed as of the mailing date . . . ." Iowa Admin. Code R. 161-3.14(2)(b).

[8] Under the commission's new rules: "Any document received by electronic mail will be filed as of the date received." Iowa Admin. Code R. 161-3.14(2)(d).

relies on *Jensen v. Sattler*, where the court held that it was apparent from the parties' pretrial filings and the court's ruling that it considered Jensen's statutory interpretation argument. 696 N.W.2d 582, 585 (Iowa 2005) (finding rule 1.904(2) motion is necessary only if district court fails to resolve an issue properly submitted for adjudication).

In assessing error preservation, we find *Jensen* more apt here than *Boesen*. In *Boesen*, the district court decided that a spouse's dower interest was subject to the bank's purchase-money mortgage, but did not reach her discrete argument that the forgery of her signature precluded the bank from complying with the statutory recording requirements for the mortgage. 805 N.W.2d at 809. That separate ground for relief was not preserved. *Id.* By contrast, in *Jensen*, the court held that no rule 1.904(2) motion was needed to preserve a homeowner's claim that the standard in the real estate disclosure act was something less than fraud. 696 N.W.2d at 585. The district court had dismissed Jensen's claims of negligent representation at the summary-judgment stage, leaving him to argue fraud as the only standard. *Id.* at 586.

Like the court's treatment of Jensen's claims, Judge Dalrymple's ruling that Ngwangwa's filing was late presupposed that the commission's rules were valid. When a party does not move to enlarge or amend, we assume as fact any "unstated finding" that is necessary to support the court's judgment. *See Brichacek v. Hiskey,* 401 N.W.2d 44, 46 (Iowa 1987); *see also Keokuk Cnty. v. Howard,* 42 Iowa 29, 31 (1875) (finding error preserved when district court could not have reached its conclusion without finding a certain fact).

Finding that Ngwangwa preserved error, we move to the merits of his statutory argument. He starts by observing that we must construe the ICRA "broadly to effectuate its purposes." *Cote v. Derby Ins. Agency, Inc.*, 908 N.W.2d 861, 865 (Iowa 2018) (citing Iowa Code § 216.18(1)). Indeed, the legislature enacted the ICRA to eradicate discriminatory employment practices. *Id.* The legislation aimed at correcting "a broad pattern of behavior rather than merely affording a procedure to settle a specific dispute." *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 19 (Iowa 2010).

Given the ICRA's remedial purpose, Ngwangwa maintains that the commission acted improperly in declaring his complaint untimely when it was filed within the statutory time limit. The ICRA allows a claim to proceed so long as the employee filed a complaint with the agency within 300 days of the alleged discriminatory practice. Iowa Code § 216.15(13). Ngwangwa insists that the commission's rule requiring an emailed complaint to be received by 4:30 p.m. on day 300 improperly narrows the scope of the ICRA.[9] He disputes the commission's interpretation of the words "file" and "day" in its administrative rules.

Tyson responds that if we examine the commission's email rule, our review must be consistent with Iowa Code chapter 17A, the Iowa Administrative Procedure Act. We agree. And, according to Ngwangwa, we may reverse the grant of summary judgment if the commission's action prejudiced his substantial

---

[9] Ngwangwa also contends that the commission's email restriction clashes with the court rules for electronic filing that count a lawsuit as timely if it is received by 11:59 p.m. on day ninety. In his view, "[i]t makes no sense and contradicts the ICRA's purpose to give the initial complaint fewer protections than the later lawsuit."

rights under criteria listed in section 17A.19(10)(b) or (c). *See* Iowa Code §§ 17A.19(10)(b) (authorizing relief if agency action is "in violation of any provision of law"), (c) (authorizing relief if the agency action is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency").

When debating how we should view the commission's actions, both parties direct us to *Renda*, 784 N.W.2d at 8. Tyson argues that "the legislature 'clearly vested' the ICRC with authority to promulgate the rules at issue and the appropriate standard is whether such rules are arbitrary, capricious, unreasonable, or an abuse of discretion." *See Renda*, 784 N.W.2d at 10. Tyson adds that the commission's rules are "hardly unique or arbitrary." The employer points out that these rules have been in place for more than a decade without a successful challenge.[10]

But Ngwangwa counters that the legislature did not delegate authority to the commission to interpret the ICRA's filing deadline. *See id.* at 13 (declining to conclude that "a grant of mere rulemaking authority gives an agency the authority to interpret *all* statutory language"). To interpret the words "day" and "filed" in section 216.15(13), Ngwangwa insists that courts must not defer to the judgment

---

[10] Tyson cites precedent for the proposition that the longevity of a rule suggests that the legislature tacitly approved of the agency action. *See Christensen v. Iowa Dep't of Revenue*, 944 N.W.2d 895, 909 (Iowa 2020) (collecting cases). But the employer does not acknowledge that the commission's recently amended rules now comport with Ngwangwa's reading of the statute. The agency substantially simplified the filing deadline rules and eliminated any reference to office hours for receipt by any method other than in-person delivery. *See* Iowa Admin. Code. R. 161-3.5(1), (4), as amended. For the agency's comparison of the rules before and after the amendments, *see* https://perma.cc/NW78-DFRB. Thus, this rule has not "stood the test of time" as Tyson suggests.

of the commission. *See id.* at 14 (finding legislature did not vest commission with authority to interpret terms "employee" and "dwelling" that have "specialized legal meaning and are widely used in areas of law other than the civil rights arena").

Following the guidance in *Renda*, we agree that the words "day" and "filed" are not specialized terms within the expertise of the commission. Rather, these terms have a particular legal meaning that extends "beyond the civil rights context and [is] more appropriately interpreted by the courts." *See id.* For instance, when counting days, Iowa Code section 4.1(34) provides that the first day is excluded and the last day is included. Under that statute, courts should construe "day" to mean "an entire day as an indivisible unit." *Bell v. Iowa Dist. Ct.*, 494 N.W.2d 729, 731 (Iowa Ct. App. 1992) (citing *Thrasher v. Haynes,* 264 N.W. 915, 916 (Iowa 1936)). "The general rule is that when the word 'day' is used it means calendar day which includes the entire day from midnight to midnight." *State v. Sheets*, 338 N.W.2d 886, 886 (Iowa 1983); *see also Day, Black's Law Dictionary* (10th ed. 2014) ("Any 24-hour period; the time it takes the earth to revolve once on its axis . . . .").

As for the "filed" complaint, "[i]t must exist in some documentary form." *Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 483 (Iowa 2018). "To file something is '[t]o deliver a legal document to the court clerk or record custodian for placement into the official record' or '[t]o record or deposit something in an organized retention system or container for preservation and future reference.'" *Id.* (quoting *File, Black's Law Dictionary* (10th ed. 2014)).

Because the commission allows for complaints to be filed by email, the deadline for emailed complaints must be consistent with the days set out in the statute.[11]

The commission's rule ending the email filing day at 4:30 p.m.—which was in effect in 2020—conflicts with the definition of day common in Iowa law. That conflict leads us to conclude that the legislature did not intend the word "day" in Iowa Code section 216.15(3) to allow anything less than a full twenty-four hours. *See Renda*, 784 N.W.2d at 19; *see also Root v. Toney*, 841 N.W.2d 83 (Iowa 2013) (holding that rulemaking requirements for appellate procedures "cannot trump the general assembly's authority to set the time to file" a notice of appeal where supreme court's supervisory order ended clerk's business hours at 2:30 p.m. on the last day of appeal deadline.)

As Ngwangwa contends, the ICRA did not vest the commission with the authority to cut short the 300th day for filing by seven and one-half hours. So, the commission's reliance on rule 161-3.5(4)(f) diverged from the legislative intent of section 216.15(13). Thus, we conclude that the commission erred in deciding that a "day" under section 216.15(13) could be less twenty-four hours. *See* Iowa Code § 17A.19(10)(c). And relying on the commission's erroneous interpretation of section 216.15(13), the district court erred in finding that Ngwangwa's complaint was untimely. Under the proper definition of day, Ngwangwa timely filed his

---

[11] Ngwangwa also objects to the commission's rule that required mailed complaints of discrimination to be received—rather than postmarked—by the 300th day. Because we find his emailed complaint was timely, we need not reach that alternative ground.

complaint. Thus, we reverse the summary judgment order and remand for further proceedings.[12]

**REVERSED AND REMANDED.**

---

[12] Because we grant relief on Ngwangwa's statutory interpretation challenge to the definition of day, we need not address his equitable-tolling arguments.